come of real estate to the payment of liens generally upon such estate. The rents and profits of each particular piece must at least be applied to the discharge of incumbrances upon that piece of real property. Lands may be leased to pay incumbrances thereon is the language of the statute. All this is borne out by the language of the chancellor in his construction of section 55 in Parks v. Parks. He is particular to limit in his language the validity of the trust to the fact that the rents and profits of each lot are to be applied to the reduction of the incumbrance upon that lot. And, furthermore, in view of the condition of affairs at the time of the commencement of this action, I do not see how any question in regard to this provision of the will can come up for adjudication. It appears that two years prior to the commencement of the action the mortgage in question had been paid and discharged; and there is, therefore, nothing whatever in this branch of the case for the judgment of the court to act upon, and it has become merely a moot question, upon which our decision can have no weight. The only event in which it could be important would be where the question arose as to whether, that provision being void, it would invalidate the whole provision made for the benefit of the minor children; and when we have come to the conclusion, as we have, that that provision might be lopped off, and the provision for the children remain, it becomes entirely unnecessary for us to consider the question as to whether the provision for the application of the rents and profits of the real and personal estate to the payment of an incumbrance upon a portion of the real estate is valid or not. This action was brought, undoubtedly, for the purpose of having the limitations upon the suspension of the power of alienation declared void, and also the provision in regard to the application of income to the use of the infants; and when we have determined those questions in favor of the validity of the will, it seems to me that there is nothing left for adjudication.

The judgment should be reversed.

WILLIAMS, J., concurs.

(13 App. Div. 296.)

### DE ROZAS v. METROPOLITAN ST. R. CO.

(Supreme Court, Appellate Division, First Department. January 15, 1897.)

1. CARRIERS—INJURY TO PASSENGER ENTERING CAR—CONTRIBUTORY NEGLIGENCE.
  It is not negligence per se to attempt to mount the front platform of a standing car, on invitation of the driver.

2. SAME—PREMATURE START—QUESTION FOR JURY.
  Whether a car was prematurely started is a question for the jury where the driver directed plaintiff to enter the car by way of the front platform, and, before she mounted the second step, the car was started, and she was thrown against the handles of the door, whereby she was injured.

Appeal from circuit court, New York county.

Action by Josephine De Rozas against the Metropolitan Street-Railroad Company for personal injuries. From an order granting a

new trial on the judges' minutes after a nonsuit, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

John T. Little, Jr., for appellant.
Charles N. Morgan, for respondent.

RUMSEY, J. The action was brought to recover damages for personal injuries suffered by the plaintiff upon endeavoring to board one of the defendant's horse cars. The plaintiff was nonsuited upon the trial, and afterwards, upon a motion for a new trial upon the judges' minutes, the order for a nonsuit was set aside, and a new trial was granted, and from the order granting a new trial this appeal is taken. The sole question presented is whether there was sufficient evidence to have warranted the jury, had the case been submitted to them, in finding for the plaintiff. The testimony upon that subject is in a small compass. All of it was given on the part of the plaintiff, and no witnesses for the defendant were sworn. The plaintiff's testimony was that she was, with her daughter, on Twenty-Third street, waiting to board the defendant's car; that the car stopped upon the daughter's signal; that the driver motioned hurriedly, and said, "Quick! Quick!" or, "Hurry up! Hurry up! This way; this way; hurry up!" She thereupon entered the car. They hurried, and got in as quickly as they could. The daughter entered first, by way of the front platform, and went right along it, through the front door. The plaintiff then stated: "I followed her. I hurried, and I got on the second step. Before I got in the car, he started up; the driver started. Q. You mean, by the second step, the platform of the car? Yes, sir. Q. How was it started? Very suddenly." It appeared from the testimony of the daughter that they were directed by the driver upon the front platform, and, being recalled, the plaintiff further said that the car started suddenly before she got in,—before she had time to turn. She said, further: "The driver had the reins in his hands. As I got in, he started the car. As I stepped on the step, he started the car, and did not give me a chance to get in the car, because I fell." The daughter stated substantially the same facts with regard to the stopping of the car. She further said that she preceded her mother upon the car, and she had just got inside the door when the car started, and she heard her mother scream. She further stated: "When my mother came into the car, she was crying." It appeared that, as the result of the sudden start of the car, the plaintiff was thrown against the side of the car, striking her arm against one of the brass handles of the door, and was quite seriously hurt. Upon this evidence, we are quite clear that the case should have been submitted to the jury, and that the granting of a new trial was proper.

There was nothing in the evidence from which it could have been said that the plaintiff was guilty of contributory negligence. The attempt to mount the front platform when the car was standing still was certainly not negligence, as a matter of law; nor do we think it could have been said to be negligence at all, in view of the fact that

she was invited by the driver to enter the car in that way. There can be no doubt that when a passenger attempts to go aboard a car which is at rest, whether a steam or horse car, it is the duty of those managing the car to give him a reasonable opportunity to get aboard, and to assure himself of his footing, before starting the car (Keating v. Railroad Co., 49 N. Y. 673; Morison v. Railroad Co. [Sup.] 8 N. Y. Supp. 436; Ganiard v. Railway Co., 50 Hun, 22, 2 N. Y. Supp. 470); and whether, under such circumstances as these, the car was prematurely started before the plaintiff had an opportunity to get aboard, and reach a place of safety, was in this case a question which should have been submitted to the jury.

The case of Black v. Railroad Co., 2 App. Div. 387, 37 N. Y. Supp. 830, is not in point. In that case the complaint was, not that the car was prematurely started, but that it was started with an unnecessary and violent jerk, by which the plaintiff, who had succeeded in entering the car, and was standing up inside of it, was thrown down, and injured. The whole point of the decision is that there was an entire failure to prove that the manner of starting the car was unusual, or other than necessarily accompanies the starting of a cable car. In that respect the case differs widely from the case at bar.

The order granting a new trial must be affirmed, with costs to the respondent to abide the event. All concur.