posed case within 20 days. Upon failure to pay such costs, the order appealed from should be affirmed, with $10 costs and disbursements.

(16 App. Div. 146.)

### LANSING v. CONEY ISLAND & B. R. CO.

(Supreme Court, Appellate Division, Second Department. April 26, 1897.)

CARRIERS OF PASSENGERS—NEGLIGENCE—QUESTION FOR JURY.

Plaintiff, a child seven years old, was placed by her father on the seat of defendant's street car. The car had stopped on a curve, and, when it started, plaintiff fell off. Plaintiff's father testified that the car started with a quick motion, and threw plaintiff out, that he had not had time to take his seat before the car started, and that the sudden start threw him into a seat. *Held*, that the questions of negligence and contributory negligence should have been submitted to the jury.

Appeal from trial term, Kings county.

Action by Ruth Lansing, an infant, by William H. Lansing, her guardian ad litem, against the Coney Island & Brooklyn Railroad Company, for personal injuries. From a judgment entered on the dismissal of the complaint at the conclusion of plaintiff's evidence, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, HATCH, and BRADLEY, JJ.

William J. Courtney, for appellant.
William N. Dykman, for respondent.

BRADLEY, J. On August 2, 1896, William H. Lansing, with his three daughters, of whom the plaintiff was the youngest, proceeded to board the defendant's car on the curve at the junction of Prospect and Jay streets, in the city of Brooklyn. After assisting his two elder daughters, Bertha and Lydia, onto the car, he lifted the plaintiff onto the car, and put her on the front seat, with her back to the motorman. Then he proceeded to get onto the car, which was an open one. After the car started, the plaintiff fell from the seat to the ground, and was injured. She was then about seven years of age. In the outset of his evidence, the father testified that he put his daughter Bertha on the car first, then his daughter Lydia, and next the plaintiff.

"The car started with a quick motion, rapid, and the child was gone. * * * I started to get in; away went the child, and the car slid about six feet. The car started, and I was thrown into my seat. * * * I put her on the first seat. I calculated to shift her. I was not given a chance to shift her. * * * Q. Where were you when the car started? A. Jerked back in the seat, and out went the child. Q. Where were you when the car started? A. Just stepping up on the side; just getting into my seat; just stepping to get into it,—sit down. Q. Then what happened? A. Well, it gave such a jerk that it leaned me way over, and I heard the little child holler, 'Papa.' She slid off, and the car went over her foot."

He further testified that he could not say that he was inside the car at the time it started; that he was hardly seated when the car jerked, and he was thrown down. The daughter Bertha testified that, when the car started, her father was in the car, on the step of

the car, getting into it.   The plaintiff was seated.   Her father, Lydia,.
and the witness were standing up, and were thrown into their seats.
When the plaintiff was placed in the car, it was partly on the cross-
walk at the junction of those two streets.   It is said by the learned.
counsel for the defendant that the curve continued from there about
30 feet to the commencement of the straight line of the track in Jay
street.   This does not necessarily appear in the record, but by a dia-
gram put in evidence it does appear that the curve extended some-
distance in Jay street from the crossing.   This has some importance,
for the reason that the plaintiff's father, her sister Bertha, and an-
other witness testified that the plaintiff fell from the car when it
reached or struck the straight track.

Upon the theory that the accident did not occur at the starting of
the car, and until it had passed the distance of 30 feet, it is with
much force urged that there is no support for the charge that it was
attributable to the negligence of the defendant.   No such imputation
is presumed from the fact that a passenger in a car is injured by the-
movement of it in passing on the curve of a railroad, but a passenger·
may, by his situation on a car, be so exposed to danger of injury by a.
rapid movement of it on a sharp curve as to require the motorman,
advised of the situation, and having the car under his control, to use-
care for the safety of the passenger.   Werle v. Railroad Co., 98 N.
Y. 650; Francisco v. Railroad Co., 88 Hun, 464, 34 N. Y. Supp. 859;.
Lapointe v. Railroad Co., 144 Mass. 18, 10 N. E. 497.   This cannot or-
dinarily be applicable to passengers seated in cars, as there may be-
no reasonable apprehension of danger to result to them from the
movement of the cars in passing over curves in the road; and the
same may be said of children in the care or under the supervision of
persons with them.   In the present case the father of the plaintiff
was responsible for the care of the plaintiff against danger so far
as he was permitted, under the circumstances, to exercise that care
for her protection against the danger to which she was subjected.   If·
he had time or opportunity to put her into a place of safety, or to·
give her his protection before the car started, and if the car started
with no unnecessary jerk, then there can be no imputation of negli-
gence against the defendant.

It may be observed that the duty of a common carrier towards pas-
sengers for their safety requires something more than ordinary or·
reasonable care.   It calls for watchfulness and a high degree of care·
and skill to guard against injury to them in that relation.   Maverick
v. Railroad Co., 36 N. Y. 378.   In view of the circumstances, as de-
tailed by the evidence of the plaintiff's father, can it be said, as mat-
ter of law, that the defendant did not fail to use the care required of·
it, and that the plaintiff's injury was not attributable to such failure?·
The defendant's servants having the charge of the car saw or ought
to have seen the father put the child into the seat of the open car,
followed by his proceeding to get aboard.   The conclusion was war-·
ranted, from his evidence, that he had no opportunity to sit down
himself or to look after the child before the car started with a quick
motion and rapidly, by which he was jerked back into the seat.   He·
adds, "And out went the child."   Thus, according to his statement,.

he was prevented from doing anything by way of taking care of her before she was thrown or fell from the seat where he had temporarily placed her. He says that he put the child as far on the seat from the end as he could, intending to place her elsewhere in the car. The inference from the evidence was permitted that the misfortune was caused by the starting of the car suddenly, too quickly,—starting it before the father was able to get to his seat or to give any attention to the child; and, whether she tumbled off at that moment or a moment later, the inference was, nevertheless, permitted that the fall of the plaintiff and her injury resulted from such starting of the car without the care which the defendant under the circumstances was required to exercise for the safety of the plaintiff. Akersloot v. Railroad Co., 131 N. Y. 599, 30 N. E. 195; De Rozas v. Railroad Co., 13 App. Div. R. 296, 43 N. Y. Supp. 27. The view taken of the case is that the question arising on the charge of negligence of the defendant, as well as that of the contributory negligence of the plaintiff's father, was for the jury.

. The judgment should be reversed, and a new trial granted; costs to abide the event. All concur.