MARIA TEN EYCK and CORNELIUS H. SLINGERLAND, Respondents, *v.* CATHARINE A. WHITBECK MINER BELLER and EDWARD JAYCOX, Appellants.

1. REAL PROPERTY — TRANSFER OF TITLE — DELIVERY AND ACCEPTANCE OF DEED. The delivery of a deed is essential to the transfer of title, and there can be no delivery without an acceptance by the grantee.

2. INTENTION — QUESTION FOR JURY. The question of delivery of a deed, involving as it does acceptance, is always one of intention, and

where there is a conflict in the evidence, it becomes a question of fact to be determined by a jury.

3. INTENTION OF MAKING EFFECTIVE CONVEYANCE. To effect the transfer of title by deed, there must be both a delivery and acceptance with the intent of making the deed an effective conveyance.

4. PRESUMPTION OF DELIVERY AND ACCEPTANCE. While the presumption is that a deed was delivered and accepted at its date, it is a presumption that must yield to opposing evidence.

5. PRESUMPTION FROM RECORDING. The recording of a deed by a grantee is entitled to consideration upon the question of delivery, and in the absence of opposing evidence may justify a presumption to that effect.

6. REBUTTAL OF PRESUMPTIONS. The presumption that a deed was delivered and accepted at its date, and the presumption of delivery arising from recording, may be repelled by proof of attendant facts and subsequent circumstances, such as the possession and control of the property by the grantor, the declarations of the supposed grantee which are inconsistent with the transfer of title, which, with the acts and conduct of the parties are all circumstances to be considered in determining whether there has been a delivery and acceptance of the deed.

7. CREDIBILITY OF WITNESSES — QUESTION FOR JURY. Where, in the evidence of material witnesses in support of the delivery and acceptance of a deed relied upon by the plaintiff in ejectment, there are contradictions and inconsistencies which might induce a jury to disregard their testimony, or at least to regard it with suspicion, the question of their credibility is for the jury.

8. CONFIDENTIAL RELATION BETWEEN PLAINTIFF IN EJECTMENT AND PARTIES TO DEEDS — BURDEN OF PROOF. Where a plaintiff in ejectment is shown to have held a confidential relation to the parties to successive deeds under which he claims title, the *onus* is upon him to prove that the transactions with such parties regarding the deeds, in so far as they were induced by him, were fair, just and understood by them.

*Ten Eyck* v. *Whitbeck*, 91 Hun, 636, reversed.

(Argued April 29, 1898; decided June 7, 1898.)

APPEAL from a judgment of the late General Term of the Supreme Court in the third judicial department, entered December 6, 1895, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The subject of this action was a farm in the town of Coeymans containing about two hundred and forty acres of land, to which the plaintiffs claim title by virtue of a deed from Peter W. Ten Eyck to John N. Carroll, a deed from John N.

Carroll to Elizabeth Ten Eyck, and a deed from Elizabeth Ten Eyck to the plaintiffs. The plaintiffs in their complaint allege the making of these several deeds; that Catharine A. Whitbeck claims to be the owner of the premises under a subsequent deed executed and delivered to her by Peter W. Ten Eyck; that such deed is invalid and conveyed no title to the premises, and demand as relief that the deed to Catharine and the record thereof be declared a cloud upon the plaintiffs' title and be canceled of record. The plaintiffs also demand that they be adjudged to be the lawful owners of the premises, and that the defendants surrender to them the possession, with damages for withholding the same.

The answer admitted the ownership of Peter W. Ten Eyck, alleged that he continued to be the owner until July 7, 1877; that there is a deed on record purporting to be executed by Peter W. Ten Eyck to John N. Carroll, but denies that such deed was intentionally, voluntarily or legally signed, executed or acknowledged by the former, and alleges that his signature thereto was obtained by fraud, deception and undue influence; that the deed was without consideration and void, and that the deeds from Carroll to Elizabeth Ten Eyck, and from her to the plaintiffs, were also void. It then alleged a conspiracy between the plaintiff Slingerland and others to procure the deed by fraud and undue influence; that Slingerland was the agent of Peter in his business matters, and had great control and influence over him; that on July 7, 1877, Peter W. Ten Eyck executed a deed to the defendant Catharine A. Whitbeck, who has ever since been in the possession of the premises, and that she is the lawful owner under and by virtue of such deed. The defendants demand judgment that the alleged deeds from Peter W. Ten Eyck to Carroll, from Carroll to Elizabeth Ten Eyck, and from Elizabeth Ten Eyck to the plaintiffs, be set aside and declared void, and that Catharine A. Whitbeck be adjudged the owner of the premises.

The reply served by the plaintiffs denied the allegations of undue influence and fraud on the part of Slingerland; alleged that at the time of the execution and delivery of the deed to

Catharine A. Whitbeck, Peter W. Ten Eyck was weak and infirm, and that Catharine, conspiring with her husband and others, procured a conveyance of the premises without consideration by fraud and undue influence.

The action was commenced September 24, 1883. It was first tried before Mr. Justice Peckham and a jury in October, 1886, when a verdict was rendered in favor of the defendants and judgment was entered thereon. Subsequently an application was made by the plaintiffs for a new trial, upon the theory that the action was in ejectment, and an order awarding a new trial was granted upon the payment of costs. The case was a second time tried before Mr. Justice Mayham and a jury in January, 1889, and a verdict was again rendered for the defendants and judgment was entered. The plaintiffs appealed from that judgment and from an order denying a motion for a new trial, and both were affirmed by the General Term. The order of affirmance, however, stated that but for the recording acts the judgment would have been reversed. An appeal was thereupon taken to the Court of Appeals, where the order of the General Term was reversed solely upon the question of the effect of the recording acts, and the case was remitted to the General Term for a review upon the facts. The appeal was then again heard by the General Term, the judgment was reversed and a new trial granted upon the ground that as the evidence then stood, while the question of the delivery of the deeds might have been submitted to the jury, it was error to submit to it the questions of fraud, undue influence or the competency of Peter W. Ten Eyck to execute the deed under which the plaintiffs claimed title. The case was a third time tried, and at the close of the evidence the court directed a verdict for the plaintiffs. The defendants asked the court to submit to the jury the question of fraud or undue influence, the question whether the deed under which the plaintiffs claimed title was delivered and accepted, and whether the defendant Whitbeck's title under the deed from Peter W. Ten Eyck was valid. These requests were denied and the defendants excepted.

There is no controversy as to the title of Peter W. Ten Eyck. Both parties claim and admit that on September 1, 1870, he was the owner of the premises, and both parties claim title under him. The plaintiffs base their title upon a deed from Peter W. Ten Eyck to John N. Carroll, dated September 1, 1870, acknowledged September 20, 1871, and recorded January 30, 1883; a deed between the same parties dated September 20, 1871, acknowledged on September 20, 1871, before William C. McHarg; a deed from John N. Carroll to Elizabeth Ten Eyck, dated September 1, 1870, acknowledged September 21, 1871, before the same officer, and a deed from Elizabeth Ten Eyck to the plaintiffs, dated January 9, 1883, acknowledged January 29, 1883, before William C. McHarg, which was recorded February 2, 1883. In each of the three deeds first mentioned a consideration of one hundred dollars was named but not in fact paid. The consideration expressed in the last deed was one dollar, services rendered for the grantor and moneys laid out and expended by the grantees at the request and for the benefit of the grantor.

The defendant Catharine A. Whitbeck claims title by virtue of a deed from Peter W. Ten Eyck, dated July 7, 1877, acknowledged the same day and recorded December 5, 1879. That deed contains the following provision : " In consideration of the sum of ten dollars, to me duly paid, and also in consideration of the party of the second part paying over to party of first part annually the proceeds of the property hereinafter described, after deducting all of the expenses for working and carrying on the same, together with the taxes, during said party of the first part's natural life; and also in consideration of party of second part paying over to Elizabeth Ten Eyck, wife of party of first part, if she be living at the time of the death of party of first part, one-third of the proceeds of said hereinafter described property annually, after deducting all expenses of carrying on the same, during her natural life; and also one-third of the proceeds of said property, after deducting all expenses, to Maria Ten Eyck, daughter of said party of the first part, during said Elizabeth's lifetime, commencing at

44

the death of party of the first part, and at said Elizabeth's death, one-half of the proceeds of said property, after deducting all expenses, shall be paid to the said Maria Ten Eyck. But if said party of second part sells said described property, which she hereby has a right to do, after said Elizabeth's death, then the said Maria shall have the use of one-half of the proceeds of said money during her natural life, said property and money to be controlled and managed by said party of the first part."

After the death of Elizabeth Ten Eyck, the defendant Catharine A. Whitbeck went into the possession of the premises, and her tenants have occupied them up to the time of the trial of this action. Peter W. Ten Eyck died April 10, 1883, and was at the time of his death eighty-nine years of age. His wife died in April, 1885, at the age of eighty years. They were married in 1835. At the time of their marriage Mrs. Ten Eyck was a widow having one child by a previous husband, the plaintiff Cornelius H. Slingerland. Mr. Ten Eyck had two children, the defendant Catharine A. Whitbeck and the plaintiff Maria Ten Eyck. The evidence tends to show that Maria was *sui juris*, but of weak mind. The plaintiff Slingerland resided upon the farm with his stepfather and mother for many years and always resided near them. He acted for them in the management of their affairs, transacted much of their business, and to a considerable extent controlled them and their business matters.

Neither of the deeds from Peter W. Ten Eyck to Carroll, nor the deed from Carroll to Mrs. Ten Eyck was recorded until more than eleven years after their alleged execution. McHarg, who prepared them and took the acknowledgments, is the attorney of record for the plaintiffs, and had been the counsel and professional adviser of Slingerland since 1854. His testimony upon the subject of the execution and delivery of the deeds is somewhat contradictory and peculiar. The testimony of the witness Carroll, through whom the title was claimed to have been transferred by Peter W. Ten Eyck to his wife, is uncertain if not contradictory.

*Charles E. Patterson* for appellants. The burden of proof was upon the plaintiffs to show the fairness of the transactions by which the deeds in question were obtained both from Mr. Ten Eyck and Mrs. Ten Eyck, and to establish affirmatively that such transactions were free from fraud, deceit, coercion, undue influence or false representation. (*Gibson* v. *Jeyes,* 6 Ves. 278; *Huguenin* v. *Basely,* 14 Ves. 273; *Whelan* v. *Whelan,* 3 Cow. 538; *Sears* v. *Shafer,* 6 N. Y. 268; *Nesbit* v. *Lockman,* 34 N. Y. 167; *Brock* v. *Barnes,* 40 Barb. 521; *Cowee* v. *Cornell,* 75 N. Y. 91; *Matter Will of Smith,* 95 N. Y. 516; *Green* v. *Roworth,* 113 N. Y. 462; *Barnard* v. *Gantz,* 140 N. Y. 249.) The defendants had a right to have the jury consider the question whether or not there was a delivery of the deeds from Peter W. Ten Eyck to Carroll and from Carroll to Elizabeth Ten Eyck. Refusal to submit that question to the jury was error calling for the reversal of the judgment. (*Jackson* v. *Phipps,* 12 Johns. 418; *Jackson* v. *Leek,* 12 Wend. 105; *Brackett* v. *Barney,* 28 N. Y. 333, 340; *Bettinger* v. *Van Alstine,* 79 Hun, 517; *McIlhargy* v. *Chambers,* 117 N. Y. 532, 539, 541; *Younge* v. *Guilbeau,* 3 Wall. 641; *Best* v. *Brown,* 25 Hun, 224; *Lawton* v. *Sager,* 11 Barb. 351; 3 Washb. on Real Prop. [4th ed.] 291, 292; *Jackson* v. *Bodle,* 20 Johns. 184; *Bronson* v. *Noyes,* 7 Wend. 188, 191; *Elwood* v. *W. U. Tel. Co.,* 45 N. Y. 549; *Kearney* v. *Mayor, etc.,* 92 N. Y. 617, 621; *Wohlfahrt* v. *Beckert,* 92 N. Y. 490; *Gildersleeve* v. *Landon,* 73 N. Y. 609, 610; *Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191, 200; *Boyd* v. *De La Montagnie,* 73 N. Y. 498; *Haack* v. *Weicken,* 118 N. Y. 67, 73; *Cutter* v. *Morris,* 116 N. Y. 316; *Powell* v. *Powell,* 71 N. Y. 71; *Kavanagh* v. *Wilson,* 70 N. Y. 177; *Dean* v. *M. E. R. Co.,* 119 N. Y. 540, 549, 550; *Munoz* v. *Wilson,* 111 N. Y. 295, 300; *Sipple* v. *State,* 99 N. Y. 284, 289, 290; *Chadwick* v. *Fonner,* 69 N. Y. 404; *Petrie* v. *Stark,* 79 Hun, 550; *Wickham* v. *Terhune,* 28 N. Y. S. R. 350; *Wells* v. *Sibley,* 31 N. Y. S. R. 40; *Martin* v. *M. A. I. Co.,* 40 N. Y. S. R. 17.) Unless the defendants were entitled to

a nonsuit, there was evidence which should have been submitted to the jury upon the question as to whether or not the deed from Mrs. Ten Eyck to the plaintiffs was an intelligent act upon her part and was free from the influence of fraud, deception, delusion and undue influence. (*Little* v. *McKeon*, 1 Sandf. 607–609.) The injustice that is wrought by the transactions upheld by the judgment of the court below, of itself throws upon the plaintiffs the burden of proving that the deeds, which underlie their title, are unimpeachable. (*Matter Will of Budlong*, 126 N. Y. 423; *Matter of Bernsee*, 141 N. Y. 389.)

*Edwin Countryman* and *J. H. Clute* for respondents. The execution and delivery of the deeds under which the plaintiffs claim title from Peter W. Ten Eyck to the farm are established by undisputed evidence. (Code Civ. Pro. §§ 935–937; *Holbrook* v. *N. J. Zinc Co.*, 57 N. Y. 616, 617; *Canandarqua Academy* v. *McKechnie*, 19 Hun, 63; *Thurman* v. *Cameron*, 24 Wend. 87, 92; *Young* v. *Duvall*, 109 U. S. 573, 577; *Ins. Co.* v. *Nelson*, 103 U. S. 544, 548; *Mather* v. *Jorel*, 33 Fed. Rep. 366; *Pearce* v. *Feagans*, 39 Fed. Rep. 587–592; *Hughes* v. *Coleman*, 10 Bush. [Ky.] 246; *Miller* v. *Marx*, 55 Ala. 322, 339; *Smith* v. *McGuire*, 67 Ala. 34, 37; *Griffin Case*, 125 Ill. 431, 436; *Phillips* v. *Bishop*, 35 Neb. 487; *Black* v. *Purnell*, 50 N. J. Eq. 365; *Sisters, etc.*, v. *Bishop, etc.*, 86 Ill. 171; *Albany Co. Sav. Bank* v. *McCarty*, 149 N. Y. 71, 80; *Ward* v. *Lewis*, 4 Pick. 518; *Merc. Dep. Co.* v. *Huntington*, 89 Hun, 465, 470; *Robinson* v. *Wheeler*, 25 N. Y. 252, 260; *Jackson* v. *Bodle*, 20 Johns. 184, 187, 188.) In order to avoid the deeds from Peter W. Ten Eyck to Elizabeth, his wife, and from Elizabeth Ten Eyck to the plantiffs, or either of them, the defendants were bound to show affirmatively the exertion of undue influence. (1 Bigelow on Fraud, 188, 190; *Sisters, etc.*, v. *Bishop, etc.*, 86 Ill. 171; *Cudney* v. *Cudney*, 68 N. Y. 148, 151, 152; *Clapp* v. *Fullerton*, 34 N. Y. 199; *Brick* v. *Brick*, 66 N. Y. 149; *Wainwright's Appeal*, 89 Penn. St. 225; *Seguine* v. *Seguine*, 4 Abb. Ct. App. Dec. 191, 198;

*Harrison's Appeal,* 100 Penn. St. 468; *Eighmy* v. *People,* 79 N. Y. 558, 559; *Waterman* v. *Whitney,* 11 N. Y. 157, 162; *Marx* v. *McGlynn,* 88 N. Y. 374; *Spaulding* v. *Keyes,* 125 N. Y. 115, 116; 34 N. Y. S. R. 589; *Sanford* v. *Ellithorp,* 95 N. Y. 48; *Shailer* v. *Bumstead,* 99 Mass. 113; *Matter of Patterson,* 36 N. Y. S. R. 813; *Mason* v. *Williams,* 53 Hun, 399, 402; *Hughes* v. *Murtha,* 32 N. J. Eq. 288; *Nelson's Will,* 39 Minn. 204, 207, 208; *Rankin* v. *Rankin,* 61 Mo. 295, 300; *Myers* v. *Hauger,* 98 Mo. 433, 439; *In re Langford,* 108 Cal. 609, 622; *Latham* v. *Udell,* 38 Mich. 238, 241; *Tillaux* v. *Tillaux,* 115 Cal. 663, 673, 675; *Matter of Will of Martin,* 98 N. Y. 193, 197; *Jackson* v. *Hardin,* 83 Mo. 175, 185; *Rule* v. *Maupin,* 84 Mo. 587, 591.)

Martin, J. It appears from the pleadings in this action that it was originally intended as an action in equity to remove a cloud upon the plaintiffs' alleged title. Since its commencement, however, the parties and the courts as well seem to have treated it as an action of ejectment. Therefore, in considering the case here, we think it should be regarded as it has hitherto been treated by the parties and the courts below.

An important question in this case is whether the evidence of the delivery and acceptance of the deeds by which it is claimed that Peter W. Ten Eyck transferred the title to the property in question to his wife was sufficient to justify the trial court in holding, as a matter of law, that the title vested in her and in refusing to submit that question to the jury.

The court having directed a verdict, the parties against whom it was directed are entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in their favor. (*Rehberg* v. *Mayor, etc.,* 91 N. Y. 137; *Weil* v. *D. D., E. B. & B. R. R. Co.,* 119 N. Y. 147, 152; *Ladd* v. *Ætna Ins. Co.,* 147 N. Y. 478, 482; *Higgins* v. *Eagleton,* 155 N. Y. 466.) Therefore, in determining this appeal, the facts and circumstances most favorable to the defendants must be regarded as established.

The evidence introduced by the plaintiffs as to the execu-

tion, delivery and acceptance of the deeds to and by their grantor, was doubtless sufficient, if uncontradicted, to establish a *prima facie* title in her. But when all the evidence is considered, it becomes quite obvious that a question of fact as to the acceptance and delivery of the deed from Mr. Ten Eyck through Carroll to his wife, was presented which should have been submitted to the jury. The subsequent acts, admissions and conduct of the parties and their grantors have an important bearing upon the question. After the alleged delivery of the deeds, there was no change of possession, or change in the manner in which the farm was managed and controlled by its former owner. He continued in possession of it and exercised all the rights of ownership over it, with the full knowledge of the alleged grantee, without objection or remonstrance. The business pertaining to the property was all transacted in his name. He executed the leases, and as late as 1881, when the question arose as to who should sign a lease, the alleged grantee declared that it should be signed by the grantor. From 1871 to 1882, the plaintiffs and their grantor at all times recognized Mr. Ten Eyck as the owner of the farm, and, so far as the evidence discloses, claimed no interest in it. There appears to have been no knowledge of the existence of the deeds from Peter W. Ten Eyck through Carroll to his wife, until more than eleven years after it is claimed they were given, when the grantor asserted that he had never given them, and the grantee, although claiming that the deeds were given, admitted that the grantor knew nothing about it. Subsequently, upon another occasion, Mrs. Ten Eyck, when she learned that her husband had deeded the farm to Mrs. Whitbeck, declared that she had no writings whatever relating to the farm, " not even the scratch of a pen." At the same time Peter W. Ten Eyck stated that in deeding the property to Mrs. Whitbeck, he had done his business as he wanted it, that the grantees in that deed were his own flesh and blood, and were the only ones to have the farm. Upon another occasion he was asked if he remembered giving Mrs. Ten Eyck a deed some years before, and replied he had never given her a deed, but stated he had

given Mrs. Whitbeck one and told who were present at the time it was executed.

In 1876 or 1877, Mrs. Ten Eyck, in the presence of her husband, said that he was unfit to take care of the property himself, and that he ought to deed it to Mrs. Whitbeck and fix it so that Maria should have an income. It is quite possible that it was in pursuance of that suggestion that Peter W. Ten Eyck transferred the premises to Mrs. Whitbeck upon the consideration and for the purposes mentioned in the deed to her, and thus effectuated Mrs. Ten Eyck's avowed intention that Peter W. Ten Eyck's children should have his property, notwithstanding the continued importunities of the plaintiff Slingerland to have it conveyed to him or his children. This is significant and important evidence tending to show that neither Mr. Ten Eyck nor Mrs. Ten Eyck recognized or understood that there had been any transfer of the farm by the former to the latter. Besides, the proof discloses many other acts and declarations of the supposed grantee and her alleged grantor, which were inconsistent with the plaintiffs' claim that these deeds had been delivered to and accepted by Mrs. Ten Eyck, among which is the fact that the deed was not recorded until 1883.

The proof also discloses that the plaintiff Slingerland knew that, although his mother had a deed of the farm, the alleged grantor knew nothing of it. This was established not only by proof of his declarations to that effect, but is evinced by his offer to Mrs. Whitbeck of twenty thousand dollars for the farm, which was its full value.

The evidence of the plaintiffs' witnesses as to the time when the deed was claimed to have been delivered by Mr. Ten Eyck to his wife, is likewise contradicted by one of the plaintiffs, who testified that on the day when it is claimed that the delivery was made in the city of Albany, the grantor and grantee were not there, but both were at home upon the farm in question. The record contains further evidence of the declarations of Slingerland, which, if true, show an intent and purpose upon his part to defraud Mr. Ten Eyck and his chil-

dren of their interest in the property. Thus it becomes obvious that the proof contained in the record, although not conclusive upon the question whether the deed from Mr. Ten Eyck to his wife was delivered and accepted as claimed by the plaintiffs, was sufficient to present a question of fact which the defendants were entitled to have submitted to the jury.

The delivery of a deed is essential to the transfer of title, and there can be no delivery without an acceptance by the grantee. The question of delivery, involving as it does acceptance, is always one of intention, and where there is a conflict in the evidence, it becomes a question of fact to be determined by a jury. There must be both a delivery and acceptance with the intent of making the deed an effective conveyance. (*Jackson* v. *Phipps*, 12 Johns. 418; *Jackson* v. *Leek*, 12 Wend. 105; *Brackett* v. *Barney*, 28 N. Y. 333, 340; *McIlhargy* v. *Chambers*, 117 N. Y. 532, 539, 541; *Younge* v. *Guilbeau*, 3 Wall. 641.)

While the presumption is that a deed was delivered and accepted at its date, it is a presumption that must yield to opposing evidence. The learned trial judge based his ruling not upon the evidence of McHarg and Carroll, but upon that presumption alone, and held that there was not sufficient evidence to overthrow it. The recording of a deed by a grantee is entitled to consideration upon the question of delivery, and in the absence of opposing evidence may justify a presumption to that effect. But these presumptions may be repelled by proof of attendant facts and subsequent circumstances, such as the possession and control of the property by the grantor, the declarations of the supposed grantee which are inconsistent with the transfer of the title, which, with the acts and conduct of the parties in relation to the property, are all circumstances to be considered in determining whether there has been a delivery and acceptance of the deed.

Moreover, the question of the credibility of the witnesses McHarg and Carroll was for the jury under the circumstances disclosed by the record, as there were in their evidence contradictions and inconsistencies which might induce a jury to

disregard their testimony, or at least to regard it with suspicion. Therefore, when the trial court refused to submit to the jury the question of the delivery and acceptance of the deeds and the defendants excepted, an error was committed which requires a reversal.

The appellants also claim that, as the evidence in the case discloses that the plaintiff Slingerland occupied a relation of trust and confidence towards both Mr. and Mrs. Ten Eyck, the plaintiffs were bound to show that there had been no abuse of that confidence, and that the transaction so far as it was influenced or induced by him was fair and understood by them. Where the relation between the parties is that of parent and child, principal and agent, or where one party is situated so as to exercise a controlling influence over the will and conduct of another, transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud, mistake or undue influence. Where those relations exist there must be clear proof of the integrity and fairness of the transaction, or any instrument thus obtained will be set aside or held as invalid between the parties. (*Cowee* v. *Cornell,* 75 N. Y. 91, 99; *In re Smith,* 95 N. Y. 516, 522; *Green* v. *Roworth,* 113 N. Y. 462, 470; *Barnard* v. *Gantz,* 140 N. Y. 249, 256.)

The proof tended to show that the relations between the plaintiff Slingerland and Mr. and Mrs. Ten Eyck were of a confidential character, and such as may well have influenced their action. It also disclosed that the deed from Mrs. Ten Eyck to the plaintiffs was prepared at the request of and from instructions received from Slingerland and not by the direction of Mrs. Ten Eyck, and that when the deed was executed by her she was so feeble in health that she was unable to sign her name, but executed it by making her mark. If a jury should find such to have been the relations existing between them at the time, the foregoing rule would be clearly applicable, at least so far as Slingerland's interests are involved. How far his relations and dealings with Mr. and Mrs. Ten

45

Eyck may affect the rights of his co-plaintiff we need not now decide. But, as the evidence tended to show that the relations between Slingerland and Mr. and Mrs. Ten Eyck were of a confidential character, the *onus* was upon the former to prove that the transactions with them were fair, just and understood by them.

By these considerations we are led to the conclusion that the court erred in not submitting to the jury the question whether the deeds from Mr. Ten Eyck to his wife and from Mrs. Ten Eyck to the plaintiffs were delivered and accepted with a knowledge of their contents.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed, etc.