WHITAKER v. STATEN ISLAND MIDLAND R. CO.

(Supreme Court, Appellate Division, Second Department. May 29, 1902.)

1. APPEAL FROM NONSUIT—PRESUMPTIONS.

On an appeal from a judgment of nonsuit the plaintiff is entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as found in her favor.

2. STATEMENTS OF WITNESS—RECOLLECTION.

When a witness, a trolley car conductor, on being asked if he did not go to one who had been injured by falling from his car, and say that the accident was due to his fault, and that he should have stopped the car, testified that he did not remember making such statements, and could not swear whether he so stated or not, the jury was justified in concluding that, if he could not deny making them, he might have made them, and therefore they might be true.

3. STREET RAILROADS—INJURY TO PASSENGER—NEGLIGENCE.

Plaintiff was injured by falling from defendant's open trolley car. When she got on she told the conductor that she wished to get off at a certain point, where it was customary for the cars to stop without signal. As the car approached the point, the plaintiff, with her little son, got up, but the car, instead of stopping, as she supposed it would, ran past and around a curve just beyond, at a rate of speed which both

the motorman and the conductor testified was dangerous under the circumstances. The rapid motion of the car around the curve caused plaintiff to be thrown out. The motorman knew that the plaintiff was occupying a position which made it dangerous to run the car at such a speed, and the conductor saw her get up in anticipation of alighting. Plaintiff's husband testified that the conductor admitted to him that the accident was due to his fault. The conductor testified that he did not remember making such statements, but would not swear either way. *Held*, that the question of defendant's negligence should have been submitted to the jury.

4. SAME—CONTRIBUTORY NEGLIGENCE.

Plaintiff was riding in an open trolley car, her little son being on a seat just in front of her. She had notified the conductor and expected the car to stop at a certain point, and just before the car reached there she arose, and placed her arm around the child, as she said, to better protect him from falling out when the car stopped. The car did not stop, and in going around a curve just beyond plaintiff was thrown out and injured. *Held*, that the question of contributory negligence should have been left to the jury.

Appeal from trial term, Kings county.

Action by Katherine V. Whitaker against the Staten Island Midland Railroad Company. From a judgment nonsuiting plaintiff, she appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hector M. Hitchings, for appellant.

Warren C. Van Slyke (George M. Pinney, Jr., on the brief), for respondent.

HIRSCHBERG, J. The plaintiff recovered a verdict on the first trial of this case, and the judgment entered on it was reversed because the jury was permitted to predicate negligence on the defendant's part from the fact that at the time of the accident the side bar on the left side of the car was up. Whitaker v. Railroad Co., 65 App. Div. 451, 72 N. Y. Supp. 814. As stated by Mr. Justice Willard Bartlett, writing for the court:

"The proof showed that the plaintiff fell or was thrown from the left side of an open car at or near an abrupt curve in the track after the car had passed the usual stopping place without stopping. The lady was standing at the time, and had her arm around her little boy, to prevent him from falling from the seat in front of her."

The evidence on the second trial was practically the same as on the first one, but the court directed a verdict in favor of the defendant at the close of the evidence, on the ground that there was no proof of defendant's negligence, and that contributory negligence on the part of the plaintiff was established as matter of law. The plaintiff is therefore entitled on this appeal to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as in her favor. Ladd v. Insurance Co., 147 N. Y. 478, 482, 42 N. E. 197; Higgins v. Eagleton, 155 N. Y. 466, 50 N. E. 287; Ten Eyck v. Whitbeck, 156 N. Y. 341, 349, 50 N. E. 963; Bank v. Weston, 159 N. Y. 201, 208, 54 N. E. 40, 45 L. R. A. 547; McDonald v. Railway Co., 167 N. Y. 66, 68, 60 N. E. 282. Under the rule referred to, the evi-

dence must be considered, for the purposes of this appeal, to have established the following facts: The plaintiff and her little boy, about 3½ years old, with her friend Mrs. Armstrong and her little boy, a few months younger, boarded one of the defendant's open trolley cars at Midland Beach, to go to Richmond or Bergen Point Ferry. The cars run upon Richmond Terrace, and in order to take the ferry it is necessary to alight at Richmond avenue, the cars always stopping for that purpose, to the plaintiff's knowledge, at the first or easterly crossing of Richmond avenue. The conductor of the car was notified by Mrs. Armstrong at the time they boarded the car that they desired to leave at the Richmond avenue crossing, in order to take the ferry. The plaintiff had traveled on the cars in question 30 times before the accident, and on each occasion the cars stopped on the east side of Richmond avenue without signal. On the day of the accident she stood up as the car approached the crossing, intending to alight, and in the expectation that the car would be stopped as usual, but, instead of stopping, it continued going very fast, and, as a consequence, she was thrown out and injured. At the crossing there is an abrupt curve and two open switches, and also other railroad tracks laid on Richmond avenue, and it was the rapid motion of the car in going around the curve, over the other tracks and through the switches, which caused the plaintiff to be thrown out. The motorman himself admitted that it was a dangerous place, and practically that he knew it was dangerous to run the car as he was running it. He said:

"I could not run around there full power because the car would not have swayed [stayed?] on the track going around that curve. I knew I was running into a dangerous place when I got down there, and I knew that Mrs. Whitaker was standing up in that car. I saw her standing up before I got down there. I saw her at the railroad crossing."

The railroad crossing referred to by him is 30 seconds distant in point of time from the place where the accident occurred. The conductor also admitted that he saw the plaintiff standing up before the accident. He said:

"It looked to me as if she was going to look around to notify me to stop. I presume that is what she was going to do."

He made no denial of the statement that he had been previously informed by Mrs. Armstrong that she and the plaintiff desired to get off for the ferry, but admitted that "we stopped there if there was any one to get out there." Neither he nor the motorman denied that the cars always stopped there without signal. The plaintiff's husband testified that the conductor called on him after the accident, and stated that he did not know the stopping place was on the east side, and that the company had asked him to make a statement that the accident had happened through the fault of Mrs. Whitaker, but that he had refused to make such a statement because it was untrue. This also was uncontradicted. The question was asked the conductor on cross-examination, referring to the plaintiff and her husband: "Didn't you tell them that, unless you could get from them a statement that it was her fault, you would lose your position, and beg her for a statement?" but the question was ruled out, and the plaintiff excepted. The conductor did then make these qualified denials:

"I don't remember telling Mr. Whitaker and Mrs. Whitaker that I appreciated that it was my fault, and I was sorry for it, and I ought to have stopped on the near side of Richmond avenue, and I had been only recently on the car, and did not know the rules. I don't remember stating that I was at fault, and I should have stopped at the near side of Richmond avenue, and I was a new man on the road, and did not know I should have stopped there. I could not swear to it whether I did so state or not."

In view of the conductor's position and responsibility in the case, the jury might very well conclude that, if he could not deny making these statements, he might have made them, and therefore they might be true. The denials would almost have the force and effect of admissions, especially in reference to the plaintiff's claim that he was unacquainted with the rule requiring the car to be stopped at the place of the accident, and had so stated to her husband. It is clear that from this evidence the jury would have been entitled to conclude that it was a rule of the company that all cars should stop on the east crossing of Richmond avenue without signal, in order to accommodate passengers who desired to take the ferry; that it was dangerous to attempt to cross the avenue at a high rate of speed, because of the tracks, switches, and curves; that on the day in question those in charge of the car, either in ignorance or violation of the rule, did cause the car to continue over the avenue without stopping, and at a high and dangerous rate of speed; that this was done with full knowledge upon the part of the conductor that the plaintiff desired to get off the car at that place, and desired him to stop it for that purpose, and with full knowledge on the part of the motorman that the plaintiff was occupying a position which made it dangerous to run the car as he was running it; and that the accident which befell the plaintiff was one to have been reasonably anticipated by both the conductor and the motorman and was the proximate result of their negligence. The proposition that under such circumstances the question of defendant's negligence should be submitted to the jury for determination scarcely needs authority to support it, but the following, among many cases, may be noted: Francisco v. Railroad Co., 88 Hun, 464, 34 N. Y. Supp. 859; Lansing v. Railroad Co., 16 App. Div. 146, 45 N. Y. Supp. 120; Schmidt v. Same, 26 App. Div. 391, 49 N. Y. Supp. 777; Wylde v. Railroad Co., 53 N. Y. 156. The same cases are equally authority for the proposition that the question of the plaintiff's contributory negligence was also for the jury. There is some dispute about the place at which the plaintiff first arose from her seat, and remained standing until she was finally thrown from the car; but, giving her the benefit of every favorable intendment, as the law requires, upon this appeal, it may be fairly said that the jury could well conclude that it was only as the car approached the place at which she was about to alight that she arose to her feet for that purpose. But she had an additional reason for standing besides her purpose of leaving the car. The seat upon which she was sitting was fully occupied, and she had accordingly been obliged to place her little boy on the seat in front of her. This was directly behind the motorman, and there the child was on his knees, peeking out over the windowsill, which is at the front end of the open trolley cars, and watching the motions of the motorman, child-like. Twice the

s'waying of the car threw him from his seat. The first time he "would have been thrown out if there hadn't been some one on the other end caught him from falling out of the car." After he was thrown down the second time, and as the plaintiff was nearing the place where she expected the car to stop in accordance with custom, and in compliance with the information given to the conductor that she was to alight there, she stood up and placed her arm around the child, in order to prevent him from being thrown out when the car stopped. She was asked on cross-examination if she 'thought she could protect her boy better by standing up than by sitting down beside him, to which she replied:

"I do. Little boys cannot be managed by rule. I know my little boy would not allow me to sit there holding him. I tried it on the seat I had been sitting, trying to hold him on my lap, but he would not be there. There was room for me to sit down to the left of my boy on the left-hand side. I do not think that I could have protected my boy from falling out on the left-hand side as well by sitting down as by standing up. I couldn't hold him better sitting down than standing up with the car in motion. I thought I could protect him better."

It certainly was not negligence, as matter of law, for the mother, about to leave the car, to stand up for that purpose, and to hold her infant child. The learned trial justice stated that "the court has to take judicial notice of the fact that it is not easier to hold a child standing up in a rapidly moving car than sitting down firmly on the seat." It may be assumed that the question with the plaintiff at the time was not one of ease, but one of safety. The case, as has been seen, presented other features besides the fact that she was standing, and which tended to make the question of her care and prudence, under the circumstances, peculiarly one for the consideration and determination of practical men. She had some reason to expect that the car would stop at its customary stopping place, and no good reason appears why it did not. In preparing to alight, it was natural that she should follow what she says was her best judgment with a view to the protection of her child from possible injury; and, whatever conclusion as to her conduct a jury may reach, it. is certainly beyond the scope of judicial vision to see negligence in the instinctive promptings of maternal solicitude. The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.