(51 Misc. Rep. 111.)

HAMLIN v. HAMLIN et al.

(Supreme Court, Special Term, New York County. June, 1906.)

1. DEEDS—DELIVERY—EVIDENCE.

A wife executed deeds to her husband of her real estate and placed them in a safe deposit box to which her husband had access. *Held*, that the fact that the deeds were found there after the husband's death is not evidence of delivery.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 627–634.]

2. SAME.

Where evidence showed that a husband recognized his wife as the owner of certain property, and his conversations and attitude were consistent with her ownership, a delivery of the deeds to the same executed by the wife to the husband. will not be inferred because they were found in his safe deposit box after his death.

[Ed. Note.—For cases in point, see vol. 16, Cent. Dig. Deeds, §§ 627, 633.]

Action by Mary B. Hamlin against Hubert W. Hamlin and others to cancel certain deeds executed by plaintiff to her husband. Judgment for plaintiff.

Clifford W. Hartridge (H. W. Taft, of counsel), for plaintiff. James Cochran, for defendants.

BLANCHARD, J. This is an action to cancel certain deeds to real property, situated in New York City and in Bellport, N. Y., executed by the plaintiff to her husband, on the ground that there was no intention on the part of the plaintiff to deliver the deeds, nor any intention on the part of the husband to acquire title to the property, until at some future time it should be desirable for him in his business to appear to be the owner of real property in the state of New York, when he might pay to the plaintiff the value of the property and become owner of record without delay. In August, 1904, Frederick R. Hamlin, the plaintiff's husband, purchased the premises in Bellport, and took the deed in the name of his wife, the plaintiff. On September 7, 1904, Mr. Hamlin purchased the premises in New York City, and took the deed in the name of the plaintiff. On September 8, 1904, the plaintiff executed to Mr. Hamlin deeds to both premises. These deeds were not recorded, but were left in a safe deposit box to which Mr. Hamlin alone had access, and were there found after his death on May 16, 1905. The insurance policy covering the premises in New York City was procured by Mr. Hamlin payable to the plaintiff, and was never transferred to Mr. Hamlin's name. Subsequent to September 8, 1904, Mr. Hamlin, in conversation with the decorator of the New York City house and the architect of the Bellport house, and his family physician and other friends, referred to the Bellport premises as the plaintiff's property, and to the New York City premises as his wedding gift to the plaintiff. In view of the confidential relations existing between Mr. Hamlin and the plaintiff, the mere possession by Mr. Hamlin of deeds executed to him by the plaintiff is not decisive upon the question of transfer of title. Mr. Hamlin was engaged in a business involving large sums of money and great hazards. He might naturally desire to retain a ready means of regaining title to the property in question, in case an emergency arose. Whether there is a valid delivery of a deed sufficient to pass title is determined by the intention of the parties at the time. Holbrook v. Truesdell, 100 App. Div. 9, 90 N. Y. Supp. 911; Ten Eyck v. Whitbeck, 156 N. Y. 341, 50 N. E. 963. The intention of the plaintiff, according to her statement, was merely to make conditional delivery. The intention of Mr. Hamlin, which must be gathered from his remarks in conversation and from his business situation, seems to have been the same. Since the business exigency which both parties intended as the condition upon which delivery should become effectual and title vest, did not in fact happen, the facts fall within the rule stated in Holbrook v. Truesdell, 100 App. Div. 9, 90 N. Y. Supp. 911, and title remained in the plaintiff. The defendants rely upon certain declarations of Mr. Hamlin, made after September 8, 1904, as evidence to oppose the conclusion above stated. When, according to a witness for the defendants, the plaintiff objected to Mr. Hamlin's sister visiting in the New York City house, Mr. Hamlin declared that he "was master of his own house," and that he "owned a house in New York, and he wished his sister to come to his house, and not to a hotel."

In dealing with prospective purchasers of part of the Bellport property, Mr. Hamlin stated that the plaintiff said they could have the lands

and that "she," meaning the plaintiff, "has won me over." Mr. Hamlin further directed his bookkeeper to open an account for both the properties, and paid for furnishing and decorating the house or gave the plaintiff the money to pay therefor. In arranging for the transfer of the insurance on his furniture in the New York City house, Mr. Hamlin told the broker that the furniture was to be installed in "my house." None of these statements, however, is inconsistent with the intention on the part of Mr. Hamlin that title should continue in the plaintiff. In the conversations upon which the plaintiff relies, the attention of Mr. Hamlin was directed to the question of title. But in none of the conversations upon which the defendants rely was the legal ownership of the premises involved, excepting only in the conversation with the prospective purchasers of part of the Bellport property, where Mr. Hamlin's language clearly shows that he recognized the plaintiff as true owner. In all these conversations his attitude was the natural one of business manager and head of his household. Under these circumstances it must be adjudged that the deeds executed by the plaintiff to Mr. Hamlin are a cloud upon her title, and must be canceled.

Judgment accordingly.