CHARLES J. SMITH, JR., Respondent, *v.* BROOKLYN ALCATRAZ ASPHALT COMPANY, Appellant.

First Department, May 4, 1923.

Landlord and tenant — action for rent — defendant purchased assets of bankrupt tenant, including lease — defendant did not accept lease — error to set aside verdict in favor of defendant.

In an action recover rent under a written lease, it appeared that the defendant purchased the assets of the bankrupt tenant, including the lease in question; that immediately after the purchase the defendant started to remove the bankrupt's personal property from the premises and paid the amount of the rent for

the period during which the personal property was being removed but did not pay any thing thereafter.

*Held,* that, under the evidence presented, there was no acceptance of the lease by the defendant, and that it was error for the court to set aside the verdict of the jury in his favor.

PAGE and MERRELL, JJ., dissent.

APPEAL by the defendant, Brooklyn Alcatraz Asphalt Company, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 30th day of March, 1922, granting plaintiff's motion for a new trial made upon the minutes.

*Brenner & Herdling* [*Mortimer Brenner* of counsel; *Philip Scharf* with him on the brief], for the appellant.

*Choloney & Weinberger* [*Nathaniel Choloney* of counsel], for the respondent.

SMITH, J.:

The action is brought for rent claimed to be due under a lease executed by the Realty Associates, a corporation, to the Topeka Paving Company, Inc. The lease was for some property on Stilwell avenue in Brooklyn, and for a term of five years commencing November 5, 1914, and ending November 5, 1919, at a total rental of $7,500, payable in equal installments of $125 each on the fifth day of each month. The lease also required the lessee to pay the taxes. In April, 1916, a petition in bankruptcy was filed against the lessee, the Topeka Paving Company, Inc. The assets of the lessee, including the lease in question were thereafter sold in one item to the defendant in this action. They included considerable personal property upon the premises, together with the lease. A bill of sale was given therefor to the defendant. This sale was upon November 6, 1916. Thereafter the defendant went upon the property and commenced at once the removal of the personal property therefrom, which was finished upon February 5, 1917. It paid rent for the three months during which it was engaged in removing the personal property, and did not pay rent thereafter. Defendant's representative swears that he had a conversation with one Fox, a vice-president of the Realty Associates Corporation, the owner in fee of the land, by which it was agreed that he might go on the land and remove the personal property and pay rent for the time that he was engaged in so removing the property. This is denied by Fox. Fox claims that he never saw the defendant's agent Kelly, who swears to have had the conversation with him. Fox swears, however, that two other men, to wit, one Beck and one Harper, had charge of the renting department. Kelly may well have been mistaken as to the person with whom he talked, as

neither Beck nor Harper are brought upon the stand to deny having had such a conversation with Kelly.

The single question in the case is as to whether the defendant accepted the assignment of the lease, and that became a question of fact which was decided in the defendant's favor by the jury, but the verdict was set aside by the trial judge as against the weight of evidence. This order was, I think, erroneous.

In the case of *Ten Eyck* v. *Whitbeck* (156 N. Y. 352) the opinion reads: " The delivery of a deed is essential to the transfer of title, and there can be no delivery without an acceptance by the grantee. The question of delivery, involving as it does acceptance, is always one of intention, and where there is a conflict in the evidence, it becomes a question of fact to be determined by a jury. There must be both a delivery and acceptance *with the intent of making the deed an effective conveyance.* [Citing cases.]

" While the presumption is that a deed was delivered and accepted at its date, it is a presumption that must yield to opposing evidence. * * * The recording of a deed by a grantee is entitled to consideration upon the question of delivery, and in the absence of opposing evidence may justify a presumption to that effect. But these presumptions may be repelled by proof of attendant facts and subsequent circumstances, such as the possession and control of the property by the grantor, the declarations of the supposed grantee which are inconsistent with the transfer of the title, which with the acts and conduct of the parties in relation to the property, are all circumstances to be considered in determining whether there has been a delivery and acceptance of the deed. * * * Therefore, when the trial court refused to submit to the jury the question of the delivery and acceptance of the deeds and the defendants excepted, an error was committed which requires a reversal."

Within the rule as thus stated, I think there can be no doubt that the jury properly decided that the defendant never accepted this lease as such. All defendant wanted was the personal property upon the premises and it wanted opportunity to remove the same therefrom. Defendant proceeded at once to remove all the machinery and personal property with the exception of some office furniture which it gave to one Smith, hereinafter referred to. The possession, therefore, which it took of the property for the three months was not such a possession as indicated an acceptance of the lease. But if the evidence of Kelly, the defendant's representative, be true, it corroborated fully that proposition. He paid rent only while he was removing the property, and has never paid any more rent, *nor has any other rent been demanded at any time by the Realty Associates Corporation, the lessor.* This would seem to indicate that the

lessor itself understood and interpreted the possession assumed by the defendant as a possession for the purpose of removal of the personal property only and not a possession under the lease. This conclusion is fortified, if not demonstrated, by other facts in the case. The Topeka Company became bankrupt in April, 1916. The lessor, which is the plaintiff's assignor, through a subsidiary of which it owns all the stock, made an agreement with Charles J. Smith, Jr., to sell to him the same real estate. Smith was to buy the property for a manufacturing purpose which afterwards did not materialize. The sale was made to one Fagan, who was concededly a dummy for Smith. In that contract of sale it was provided that Fagan should pay all of the taxes accruing during the term of the contract which were the very taxes that the Topeka Company agreed to pay. It was provided that possession was to be given to Fagan upon the 27th day of July, 1916, which was soon after the bankruptcy of the Topeka Company. The payments under that contract were all of them to be made before the lease to the Topeka Company had expired and upon the making of those payments a deed of the property was to be given to Fagan, on January 2, 1919, whereas, this lease would not have expired until November, 1919, if it were still existent. It is true that this contract was made subject to this lease, but it is very cogent evidence of the fact that the lessor never for a moment expected that this lease would be, or had been accepted by defendant. It indicates a clear expectation on the part of the lessor that the property would be free from the lease upon the insolvency of the Topeka Company to the end that it might carry out the contract made in its behalf to Fagan. The facts in the case and the evidence must be read in connection with this contract, and with this undoubted expectation on behalf of the lessor. It is true that Smith, for whom Fagan was the dummy, swears that he occasionally demanded rent from the defendant. But it appears that the money was not demanded specifically as rent, but as payment upon some supposed liability. Smith swears that he took possession of the property immediately after the personal property was removed therefrom. This he attempts to explain thereafter, but his first evidence is very significant, especially in view of the testimony of Kelly, the defendant's representative, that Smith asked him to leave upon the premises some personal property, such as office fixtures and so forth, which Kelly did, for the use of Smith upon the premises. It is only after this contract with Fagan had fallen through that the Realty Associates now claim that the defendant accepted the lease and is liable thereupon. The lateness of the claim very much impairs its sincerity. The very fact that the personal property including the

machinery was all removed from the premises is corroborative evidence of the testimony of Kelly that defendant did not intend to take possession as an acceptance of the lease. The lease apparently was not bought separately by defendant, but all this property was bunched together and bid in at the same time. It is all included in the same instrument made by the trustee in bankruptcy, and the acceptance, therefore, of the personal property cannot in any way be claimed to be an acceptance of the lease, and such acceptance is clearly negatived in my judgment by the evidence in the case. The provision in the contract of sale by the lessor of this realty to Smith as made subject to this lease was merely a protective provision as is clearly indicated by the provisions of the contract calling for the delivery of possession to Smith in 1916 while the lease did not expire until 1919, for payments to be made by Smith and final delivery of deed to him before the expiration of the lease now claimed to have been accepted by defendant. If the jury had found otherwise their verdict would have been clearly against the weight of the evidence.

This was the question submitted to the jury under a fair charge, and the jury has found with the defendant. I see no justification for setting aside their verdict, either as against the law or as against the weight of evidence.

In my judgment the order should be reversed, with costs, and the verdict reinstated.

CLARKE, P. J., and McAVOY, J., concur; PAGE and MERRELL, JJ., dissent.

Order reversed, with costs, and verdict reinstated, and judgment directed to be entered thereon, with costs.