(56 Misc. Rep. 35.)

### PEOPLE ex rel. McKNIGHT v. GLYNN, State Comptroller.

(Supreme Court, Special Term, Albany County. September, 1907.)

1. COUNTIES—OFFICERS—REMOVAL.

The "veteran acts," so called, are limited in their operation to subordinate positions, and the office of a transfer tax appraiser for a county is not one of the positions (Civil Service Law, Laws 1899, pp. 808, 809, c. 370, §§ 20, 21) affected thereby.

2. SAME—TRANSFER TAX APPRAISER—REMOVAL.

The transfer tax appraiser for a county, though a veteran, may be removed from office by the State Comptroller without notice or any stated charges of incompetency or misconduct.

Application by the people, on the relation of Harvey Stewart Mc-Knight, for writ of mandamus to Martin H. Glynn, State Comptroller. Writ denied.

John B. Merrill, for petitioner.
Wm. J. Roche, for Philip Frank.
Wm. S. Jackson, Atty. Gen., for Comptroller.

FITTS, J. On or about the 11th day of April, 1901, the relator was appointed by the then Comptroller of the state of New York transfer tax appraiser for the county of Queens, at a compensation of $1,500 per annum, pursuant to chapter 173, p. 380, of the Laws of 1901, and performed the duties of that office and received the emoluments thereof until February 1, 1907. On the 1st day of February, 1907, the respondent above named, Martin H. Glynn, as Comptroller of the state of New York, without notice of any stated charges of incompetency or misconduct against the relator, removed him from said office. The relator was an honorably discharged soldier, having served as such in the volunteer army of the United States during the Spanish War; and it is his contention that his removal from this office by the Comptroller was illegal and contrary to the provisions of section 21 of the civil service law of this state (Laws 1899, p. 809, c. 370), which limits the power of removal of a person holding a position by appointment in the state of New York who is an honorably discharged soldier, except for incompetency or misconduct, shown by a hearing, upon due notice, on stated charges.

That section, in so far as it relates to the matters in controversy, is as follows:

"Sec. 21. Power of Removal Limited.—Every person whose rights may be in any way prejudiced contrary to any provision of this section shall be entitled to a writ of mandamus to remedy the wrong. No person holding a position by appointment or employment in the state of New York or in the several cities, counties, towns or villages thereof, * * * who is an honorably discharged soldier, sailor or marine, having served as such in the volunteer army or navy of the United States during the Spanish War, * * * shall be removed from such position except for incompetency or misconduct, shown after a hearing, upon due notice, upon stated charges * * * nothing in this section shall be construed to apply to the position of private secretary, cashier or deputy of any official department."

Sections 20 and 21 of the civil service law are practically a re-enactment of the provisions of chapter 716, p. 1797, of the Laws of 1894, as amended by chapter 821, p. 753, of the Laws of 1896; the title of the latter act being as follows:

"An act to further amend chapter 716 of the Laws of 1894, entitled 'An act to amend chapter 312 of the Laws of 1884, entitled "An act respecting the employment of honorably discharged Union soldiers and sailors in the public service of the state of New York, relative to removals." ' "

These acts are what are known as the "veteran acts," and have reference to preferences to be given to veterans in appointment and promotion to "positions," and limit and restrict the power of the appointing officer to remove, except for misconduct or incompetency, after a hearing had, upon charges duly served. While the title of the so-called "veteran acts" relate only to the employment of honorably discharged soldiers and sailors in the public service of this state, by the provisions of those acts they are entitled to preference for "appointment and employment upon all public works of the state of New York

and the cities, towns and villages thereof," and cannot be removed from such positions or employment, except for incompetency or misconduct shown, after a hearing had, upon due notice, upon charges made, and with the right to such employé or appointee to a review by a writ of certiorari. Laws 1896, p. 754, c. 821, § 2.

The courts of this state, in construing the "veteran acts," have held that they are limited in their operation to subordinate positions and do not apply to the more important municipal offices. People ex rel. Jacobus v. Van Wyck, 157 N. Y. 495, 52 N. E. 559. In the case last referred to, the relator, Jacobus, was, at the time of the consolidation of the cities of New York, Brooklyn, and other communities into the municipality known as the "city of New York," one of the assessors of the city and county of New York. Upon the inauguration of the new city government, the mayor appointed five persons to constitute the board of assessors, as section 943 of the charter (Laws 1897, p. 335, c. 378) required him to do. A proceeding was then instituted by Jacobus to compel the mayor of New York to assign him to serve as a member of the board of assessors of the city. The court at Special Term granted an order directing a peremptory writ of mandamus to issue requiring the mayor to assign the relator to serve as a member of the board of assessors. An appeal was taken from the order of the Special Term to the Appellate Division, where the same was reversed; and from that order of reversal an appeal was taken to the Court of Appeals, where the order of the Appellate Division was affirmed, the court there holding that the "veteran acts" limited the employment and retention of veterans in the service of the state and its municipalities to subordinate positions and did not apply to the more important municipal offices. Chief Justice Parker, in stating the views of the court at page 503 of 157 N. Y., and page 561 of 52 N. E., uses this language:

"So when this court considered this act of 1894 in the case of People ex rel. Fonda v. Morton, 148 N. Y. 156, 42 N. E. 538, it had before it this statute, so far as the question under consideration is concerned. Chief Judge Andrews, in delivering the opinion of the court, said of the statute: 'It was intended to create a privileged class, entitled to preferential employment in subordinate positions in the public service; the foundation of the preference being meritorious service as soldiers and sailors in the war for the preservation of the Union. * * * The act applies to employés of every grade in the public service or on the public works of the state and the cities, towns, and villages thereof. The preference is given, not only in a clerical or other subordinate position, but to every person seeking public employment as a laborer on the canals or on the streets of a city, or in any capacity however humble.' This interpretation of the statute is in accord with the general understanding of it, and is borne out by the title of the act, which is, 'An act respecting the employment of honorably discharged Union soldiers and sailors in the public service of the state of New York, relative to removals.'. Certainly the title does not suggest that public officers, vested with discretion in the performance of their duties, subject to no direction, but, on the contrary, empowered to appoint clerks and other subordinates and fix their compensation, were intended to be affected by the statute, the purpose of which was stated in its title. And as the term 'position' that the statute makes use of is an indefinite one, and may include officers or be limited to cases of employés, it is proper to refer to the title of the statute to determine its scope and intent."

And again, at page 506 of 157 N. Y., and page 562 of 52 N. E., in stating the test to determine whether the position was subordinate or not, Judge Parker uses this language:

"The test by which to determine whether they are subordinates is not whether a review of such of their determinations as are quasi judicial may be had, but whether, in the performance of their various duties, they are subject to the direction and control of a superior officer, or are independent officers, subject only to such directions as the statute gives. If the latter, then the officer is not a subordinate, as the term is used in the decisions bearing upon this subject."

The tax appraiser does not hold a "position" in the sense in which that word is used in sections 20 and 21 of the civil service law. On the contrary, he is the holder of an "office." Section 229 of the tax law, as it was amended (Laws 1901, p. 384, c. 173; Laws 1905, p. 835, c. 368; Laws 1906, p. 1495, c. 567), requires that:

"Each of the said appraisers shall file with the State Comptroller his oath of office and his official bond in the penal sum of not less than $1,000 in the discretion of the State Comptroller, conditioned for the faithful performance of his duties as such appraiser, which bond shall be approved by the Attorney General and the State Comptroller."

This is an unmistakable indication of how the Legislature looked upon the place—that it was not considered a subordinate position, but one of official power, dignity, and importance, and from its very nature requiring in the incumbent qualifications different from those requisite in a clerical or subordinate position. The powers and duties of the tax appraisers are of a quasi judicial character. They call for the exercise of sound judgment, discretion, and knowledge of legal principles. They demand upon the part of the incumbent an understanding of statutory provisions and ability to pass upon complicated questions of law. The appraiser has power to issue subpœnas and compel the attendance of witnesses. His powers and acts partake of the nature of the acts, powers, and duties of commissioners appointed by the court in condemnation proceedings and of referees appointed by the court to hear, try, and determine the issues in actions, or to take proof in actions and report the same to the court with their opinion thereon. The office is in no sense a subordinate position; and the Comptroller, who appoints the appraiser, has no power to review his acts, or in any way control them. The only right to review his acts is vested by statute in the surrogate of the county in and for which the appraiser is appointed. The office is not a position in the Comptroller's nor in the surrogate's office, but is an independent office, separate and distinct from any other.

The "veteran acts," if now in existence, would afford the relator no relief from removal by the Comptroller, as the position held by him was an independent office, and not a subordinate position. The question for me to determine is whether the incorporation of these provisions in the civil service law of this state alters or changes the situation. In construing the "veteran acts" with reference to the limitation of the power of removal, the courts have laid stress upon the title of the act, the same having reference to the "employment" of honorably discharged Union soldiers, and have construed the same

as applicable only to subordinate positions. As construed by the courts, from the year 1884 down to the passage of the civil service law of this state in the year 1899, the policy of the state, as indicated by its legislative enactments, limited and restricted the preferential employment and appointments of veterans to subordinate positions. When a legislative enactment, involving questions of great practical importance and of constant application, has received judicial construction in the courts below, and the decisions thereon have been acquiesced in by the parties and have remained unquestioned, the re-enactment of the same provision in subsequent statutes will be deemed an adoption by the Legislature of such construction. People ex rel. Outwater v. Green, 56 N. Y. 466; Pulitzer v. City of New York, 48 App. Div. 6, 62 N. Y. Supp. 587. In the case last referred to, the court held:

"That the re-enactment of a statute which has received a judicial construction in the same or substantially the same terms amounts to a legislative adoption of such construction."

From the re-enactment of these provisions relative to the appointment and removal of "veterans" in the civil service law of this state, after the same had been judicially construed and limited in their application to subordinate positions, no inference can be drawn that it was the intent of the Legislature to change the policy of the state, which had been acquiesced in and accepted for a period of 15 years, in so radical a manner as to include within the purview of those sections, in addition to subordinate offices and positions, independent offices, and positions of a quasi judicial character and those involving the exercise of acts of discretion. The relator's tenure of office as tax appraiser was not protected by section 21 of the civil service law, and the Comptroller, as an incident to his power of appointment, had also the power of removal.

For these reasons, the application should be denied. An order can be entered denying the application, with $10 costs.