FORD et al. v. GALE et al.

(Supreme Court, Appellate Division, Fourth Department.　March 5, 1913.)

1. DEEDS (§ 194*)—EVIDENCE—PRESUMPTION OF DELIVERY.

　　In the absence of proof, there is a presumption that a deed is delivered, if at all, at the date of its execution.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 574–583, 623; Dec. Dig. § 194.*]

2. DEEDS (§ 208*)—DELIVERY—SUFFICIENCY—NO CHANGE IN POSSESSION.

　　Where there was no change in the management or possession of a farm following the execution of a deed thereof, and the grantor's tenant knew of no change of ownership, and the checks from the sale of produce continued to be made in the name of the grantor, there was no proof of a delivery at the time of execution.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632, 634; Dec. Dig. § 208.*]

3. DEEDS (§ 194*)—EVIDENCE—PRESUMPTION FROM RECORD.

　　A presumption of delivery of a deed is raised by its recording, effective only as of the date of the recording.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 574–583, 623; Dec. Dig. § 194.*]

4. DEEDS (§§ 54, 64*)—REQUISITES—DELIVERY.

　　A delivery and acceptance are essential to support every deed.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 116, 142, 143; Dec. Dig. §§ 54, 64.*]

5. DEEDS (§ 68*)—VALIDITY—COMPETENCY—TIME.

　　Where there was no proof of delivery of a deed at the time of its execution, but a presumption of delivery from its recording two years thereafter, the issue of the grantor's mental competency as relating to delivery was to be determined as of the time of the recording.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 149–155; Dec. Dig. § 68.*]

6. DEEDS (§ 211*)—EVIDENCE—COMPETENCY OF GRANTOR.

　　Evidence in an action to set aside a deed on the ground of the grantor's mental incompetency *held* to show that at the time the deed was recorded the grantor was incompetent either to make or deliver a deed.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 637–647, 649; Dec. Dig. § 211.*]

7. DEEDS (§ 196*)—EVIDENCE—PRESUMPTION AND BURDEN OF PROOF.

　　Where the grantor, an aged woman, physically and mentally feeble, was a member of the family of her niece, and executed a deed of the greater part of her estate to her niece, who would not have inherited any part of the estate, in which the grantee's husband, the grantor's confidential adviser, wrote an executory contract for the grantor's support during her lifetime, without suggestion or approval by either party to the deed, there was a presumption of law against its validity, and the grantee had the burden of showing fairness and every element of a valid transfer.

　　[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 587–593; Dec. Dig. § 196.*]

Appeal from Order Entered on Report of Referee.

Action by John Ford and others against Electa M. Gale and others. From a judgment of the Supreme Court entered on report of a referee,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dismissing the complaint on the merits, plaintiffs appeal. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

James L. Weeks, of Jamestown, for appellants.

Arthur B. Ottaway, of Westfield, for respondents.

LAMBERT, J. The action is to set aside a deed from Martha Ford, deceased, to the respondent Electa Gale. It is claimed that the deed is the result of undue influence practiced upon the grantor, and that she was mentally incompetent to make or deliver the same. The learned referee has found for the validity of the conveyance.

The deed in question was executed August 7, 1905, and was recorded June 25, 1907, nearly two years later. The grantor, Martha Ford, died, unmarried and intestate, April 27, 1908, and she was 78 years of age at the time of her death. She was survived by the plaintiffs, a brother, nephew, and niece, and by the defendants, Amos Ford, a brother, and William H. Ford, a nephew, her only heirs at law, who would inherit her estate. The defendant Amos Ford is the administrator of the estate of deceased, and is the father of Electa Gale, the other defendant and the grantee in the deed. Deceased was the owner of the farm in question and of personal property amounting to about a thousand dollars. The farm is valued at from $3,000 to $4,000.

Except for a few years when she was keeping house for a brother, the deceased had always resided upon the farm conveyed by the deed in suit and adjoining the farm occupied by the grantee and her husband, L. D. Gale; and for about three years immediately preceding her death deceased resided in the family of the grantee. From his own evidence it appears that L. D. Gale for years had been the confidential adviser of the grantor and her only one, except during the time that she had resided with her brother, from 1899 to 1903. He had customarily attended to her business matters, and it was to him that she came for guidance and advice relative to her property for over 20 years. In 1905, because of her advanced age and her physical infirmities, she went to Gale's home to live. There is some intimation of an understanding that she was to pay the expense of certain changes in the construction of his house, necessitated by her coming into the family, but it is suggestion merely, and the evidence does not disclose any arrangement relative to compensation for her care and maintenance.

At the date of the deed the Ford farm was under lease, and so continued until the death of the grantor. Following the making of the deed, Gale continued, as he had theretofore, to attend to the details of her business in connection therewith. The proof as to the circumstances surrounding the actual making of the deed is confined to the evidence of Gale himself. He frankly states that on the day of its execution he incidentally remarked to her that he was going to see an attorney upon business, and that Miss Ford then asked him if he would take her deed along, and "have it drawn up to Mrs. Gale." He replied in the affirmative, and she obtained the deed and handed it to him. He then went to one of respondents' attorneys and from data and in-

structions furnished by Gale the deed was drawn. He fixed the consideration at $1 and the agreement by the grantee to "properly care for and support the party of the first part during her life, and furnish her suitable clothing, medical attendance and nursing and after her death a suitable burial and headstone." There is no suggestion in the proof that Mrs. Gale was consulted or agreed to perform this contract, except for the inference of acceptance, claimed to arise through the recording of the deed. Gale then took the deed to his home, and, while the grantor was alone with him, he swears that she read it over and signed it and acknowledged its execution before him as a notary public. He says that it was then left lying upon the desk and that Mrs. Gale was not then in the room. He further testifies that he later saw this deed in the possession of the grantee, but he does not identify the time or the place he so saw it. The referee has found specifically that the deed was delivered upon the day it bears date, and that the grantor was mentally competent to make and deliver it upon that day.

[1, 2] While there is serious question as to grantor's competency at that time, we do not find it essential to pass upon that phase of the case, in view of the conclusion reached upon other grounds. The finding of a delivery upon that day is, however, entirely unsupported by the evidence. Gale is the only witness who speaks of the circumstances attending the signing and acknowledgment of the deed by the deceased, and from his testimony it affirmatively appears that there was no delivery at that time. While in the absence of proof it is a legitimate inference that a deed is delivered, if at all, at the date of its execution, yet that is a presumption only, and must give way to positive proof. Following the execution of the deed, there was no change in the management or possession of the farm. The tenant upon the property knew of no change of ownership. The checks arising from the sale of produce continued to be made in the name of the grantor. There is therefore no suggestion of proof of a delivery of this deed preceding its recording in July, 1907.

[3] The recording again raises a presumption of delivery, but that presumption is to be given effect only as of the date of the recording. It does not relate back to the date of execution, and therefore the grant is to be sustained, if at all, upon a delivery made June 25, 1907.

[4, 5] It is elementary that a delivery and acceptance are essential to support every grant, and under the proof, as above outlined, the issue of mental competency, so far as related to delivery, should have been addressed to the time of the recording. The referee has not made any findings of fact with reference to that date, nor did the respondents address their proof to that time or issue.

[6] It is undisputed that in the autumn of 1906 the grantor sustained a fall and from such time deteriorated rapidly, both mentally and physically. The admissions of the grantee herself can only lead to the conclusion that from the autumn of 1906 the grantor was incompetent, or, at least, that her actions were those of an incompetent person. It is undisputed that about two months after the deed was recorded the grantor was found by physicians selected to inquire into her mental condition to be suffering from senile dementia, a mental

ailment, wholly incapacitating her, and which was slowly progressive in its nature. Such ailment must have continued for some considerable time prior thereto. These unquestioned facts, together with the other proof in the case, compel the conclusion that at the time of the recording of this deed the grantor was wholly incompetent to either make or deliver the deed in controversy.

[7] Under the circumstances of this case, the respondent, grantee, had the burden of showing the fairness of the transaction and that the deed was actually and understandingly delivered. Her husband admits that for years he had been the confidential adviser of the grantor and her only son, and he seems to have exercised control over all her business matters for some time. The grantor, an aged woman, was a member of his immediate family and so situated that every opportunity was afforded for the exercise of undue influence, if desired. She was feeble physically and mentally, and therefore such a person as might be easily unduly influenced. The effect of the deed was to send the greater portion of this estate to a person who would not have inherited any portion of the estate. The entire transaction was conducted by the grantee's husband. If his evidence is true, the deed was his creation rather than hers. It purports to express one side of an executory contract for her future support and maintenance, and yet there is not an iota of evidence that she ever suggested any such intention. Her directions to have the deed drawn certainly do not go to that extent, and upon the proof as it stands that executory contract emanated from the mind of Gale and without suggestion, acquiescence, or approval from either party to that contract. Under such circumstances, a presumption of law arises against the validity of the transfer, and it becomes incumbent upon the grantee to establish its fairness and every element of a valid transfer. Ten Eyck v. Whitbeck, 156 N. Y. 341, 50 N. E. 963. Mrs. Gale has entirely failed to meet this burden. Her proof of a delivery of the deed does not antedate the recording of the instrument, and at that time the grantor was wholly incompetent to make a delivery thereof. She offers no explanation of the long delay in recording and the other circumstances of the case establish that there was no delivery at a time when the grantor could make such effective.

For the foregoing reasons, the judgment must be reversed, with costs to abide the event, and, inasmuch as further proof may be adduced, a new trial should be ordered. All concur.