In the Matter of the Application of PHILIP A. MYLOD, Petitioner, for a Peremptory Mandamus Order against MARK GRAVES, as Commissioner of Taxation and Finance, and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Supreme Court, Special Term, Albany County, April 8, 1936.

*James E. Carroll,* for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Seth T. Cole* of counsel], for the respondents.

SCHIRICK, J.   This is a petition of Philip A. Mylod for a peremptory mandamus order directing the respondents, the Commissioner of Taxation and other members of the Tax Commission, to reinstate the petitioner to the position of appraiser-attorney in transfer tax matters for the county of Dutchess.

On April 5, 1923, petitioner was appointed to the position to which he seeks to be reinstated.   His appointment was authorized by sections 229 and 249-u of the Tax Law.   His duties are set forth in sections 230 and 249-v of that law.   On July 31, 1935, he was removed from office and another was appointed in his place by order of the respondent Mark Graves, Commissioner of Taxation and Finance.   No charges of incompetency or misconduct were ever lodged against him, nor was he given a hearing.

The petitioner is, and at the time of his appointment was, an honorably-discharged sailor of the United States navy.   Claiming protection under section 22 of the Civil Service Law, he has brought this petition for reinstatement.

Two preliminary matters should be disposed of before proceeding to the main issue in this proceeding.   Upon the application and return no question of fact is raised.   The issue being one purely of law, the court must either grant a peremptory mandamus order, or dismiss the petition.   There is no occasion for the issuance of an alternative mandamus order.   Upon this proposition the parties are agreed, and they are amply supported by the authorities. (Civ. Prac. Act, § 1319; 10 Carmody N. Y. Prac. § 693.)   The second preliminary matter relates to the sufficiency of the answering affidavits.   Petitioner asserts that since these do not controvert the facts stated in the petition, the order must be granted.   But if the issue herein is one of law, this contention must be rejected. The nature of the petitioner's duties is a matter of law.   All of the essential facts, such as the appointment and removal of the petitioner, and his status as an honorably-discharged sailor of the

United States navy, are admitted. Upon this petition for a peremptory order, the court may treat the return as a demurrer. Such allegations of the petition as assert conclusions of law are not admitted.

Section 22 of the Civil Service Law, so far as here material, is as follows: " No person holding a position by appointment or employment in the State of New York * * * who is an honorably discharged * * * sailor * * * having served as such * * * in the world war * * * shall be removed from such position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges, and with the right to such employee or appointee to a review by writ of certiorari."

In the application of this section the courts have drawn a distinction between *subordinate positions* and *independent offices*. The protection of the section extends only to the former and not to the latter. The leading case is *Matter of Christey* v. *Cochrane* (211 N. Y. 333). The relevant parts of that decision are quoted:

" It was intended to create a privileged class entitled to preferential employment in subordinate positions in the public service, the foundation of the preference being meritorious service as soldiers and sailors in the war * * *. The preference is given in not only clerical and other *subordinate* positions, but to every person seeking public employment as a laborer in the canals or on the streets of a city, or in any capacity however humble. (Quoted from *People ex rel. Fonda* v. *Morton,* 148 N. Y. 156.)

" This interpretation of the statute is in accord with the general understanding of it and is borne out by the title of the act, which is ' An act respecting the *employment* of honorably discharged Union soldiers and sailors in the public service of the State of New York, relative to removals.' Certainly the title does not suggest that public officers, vested with discretion in the performance of their duties, subject to no direction, but on the contrary empowered to appoint clerks and other subordinates and fix their compensation, were intended to be affected by the statute, the purpose of which was stated in its title. And as the term ' position ' that the statute makes use of is an indefinite one, and may include officers or be limited to cases of employees, it is proper to refer to the title of the statute to determine its scope and intent. (Citations omitted.)

" Thus referring to the title, and according to it its proper weight, we readily perceive that the word ' position ' in the connection in which it is used, is intended to embrace all subordinate places in the public service, and that the statute is limited in its operations to those engaged in the public employment, as that term is ordi-

narily used, which does not include the more important municipal offices.

" So far as we have observed the view taken by Chief Judge ANDREWS, that the veteran acts apply only to subordinate positions is in harmony with all judicial expression on the subject, and is not only justified but required by the statute when its provisions are read in connection with its title."

In establishing this distinction between a *subordinate position* and an *independent office*, the courts have realized that the distinction is one which is sometimes very difficult to draw. In *Matter of Dawson* v. *Knox* (231 App. Div. 490) it was said: " In general a public officer is one chosen by election or appointment to a public office duly established by law in which he is required to perform duties either legislative, executive or judicial; and to have contact with the public acting in some capacity for their benefit in the exercise of such duties — as distinguished from employment in matters of mere administrative detail or in some subordinate clerical or advisory relation to another officer. There is involved in the term, in general, the elements of tenure, duration and emoluments. It implies that the incumbent has taken an oath of office, although this is not an infallible test."

In *People ex rel. Jacobus* v. *Van Wyck* (157 N. Y. 495) the court said: " It will be difficult at times to determine whether a given position is a subordinate one or not, and possibly no rule can be laid down by which one class can always be readily distinguished from the other. But other cases need not be anticipated, as it is sufficient for our present purpose that there is no difficulty in determining that the position in question is not a subordinate one. The incumbent of the office of assessor is inferior in rank to that of the mayor by whom he is appointed, but he is not subject to the direction of the mayor or to any one else, in the discharge of the very important and quasi-judicial duties pertaining to his office. His duties are enjoined by statute, and are within a smaller compass than those placed upon the mayor by the same act, but, within the limits defined by the statute for each officer, the one is not more independent in the discharge of his duty than the other."

In determining whether the petitioner is protected by section 22 of the Civil Service Law, it is essential to consider the nature of the duties of an estate tax appraiser-attorney. Are they such as to make the position a *subordinate* one or an *independent office?*

On the death of a person leaving an estate sufficiently large, a petition is usually filed with the surrogate praying for the appointment of an appraiser. In the counties specified in sections 229 and 249-u of the Tax Law the surrogate appoints the salaried

appraiser designated by the President of the Tax Commission. Such appraiser gives notice to all persons interested in the proceedings, including the Tax Commission, of the time and place of the appraisal. The appraiser determines, in the first instance, the value of property, what items are to be included, the exemptions to be allowed, etc. He may issue subpœnas, compel the attendance of witnesses, and examine them upon oath. Upon the completion of these tasks, the appraiser makes his report to the surrogate. Upon this report, the surrogate enters an order as of course, assessing taxes. Any one objecting to the assessment must then appeal to the surrogate for a review of his order. No appeal lies directly from the first order, which is purely a ministerial act.

Such were petitioner's duties as transfer tax appraiser. Petitioner claims that he was also an attorney representing the Tax Commission in transfer tax matters. The only warrant that the court finds for his acts as attorney is contained in the warrant of attorney appended to the answering affidavit. This document empowers the petitioner to appear for and represent the Commission " at the opening of all safe deposit boxes and the transfer of funds on deposit in banks, * * * notice of which is required to be given the State Tax Commission under the provisions of section 227 of chapter 60 of the Consolidated Laws of 1909, as amended." The court is satisfied that petitioner's duties as attorney were subordinate and incidental to his duties as appraiser. In order to evaluate the estate of a decedent who left a safe deposit box, it was essential for him to evaluate its contents. In so far as he was empowered to waive notice, this was merely a convenience to the people of the locality. Petitioner's job was that of estate tax appraiser. Incidental thereto he had a power of attorney at the opening of deposit boxes. In so far as petitioner may have performed other acts, they were not authorized either by his appointment or by his power of attorney. Indeed, it would have been inconsistent with his duties as appraiser to represent the Tax Commission in transfer tax matters.

The duties of transfer tax appraiser have been characterized in several judicial opinions. In *Matter of Barnes* (N. Y. L. J. Dec. 17, 1913, p. 1363) Surrogate FOWLER said:

" It is alleged that the transfer tax appraiser always acts as a representative of the State Comptroller rather than as a disinterested arbiter. This, if true, is a violation of the obligations of the appraiser and not contemplated by the act. An appraiser should decide with entire impartiality the questions arising before him, whether of law or of fact or mixed questions of law and fact.

" The State Comptroller is only one of the parties to the proceeding before the appraiser, and is entitled to no more consideration than the representatives of the estate."

*People ex rel. McKnight* v. *Glynn* (56 Misc. 35) is a case dealing with the precise issue at bar. The court held that an estate tax appraiser held an independent office and was, therefore, not protected by section 22 of the Civil Service Law.

This court is in complete agreement with those cases. Although appointed by the President of the Tax Commission, petitioner was not his subordinate. In the performance of his duties petitioner exercised independent discretion. The characterization of his office as something like an official referee of the Surrogate's Court seems an apt one. It follows that the petitioner is not protected by section 22 of the Civil Service Law, and this petition must be dismissed.

Petition dismissed, with ten dollars costs.