John D. Bennett, S.
The executor appeals from the pro forma order fixing the tax upon the report of the appraiser. The appraiser included in the gross estate one half of the value, as of the date of death, of four parcels of real property formerly owned by the deceased, which interest was evaluated at $48,500.
The decedent died on April 20, 1955. Almost four years prior to his death the decedent executed separate deeds dated June 15, 1951 which by their terms conveyed his half interest in two of the parcels to one son and his half interest in the other two parcels to another son. These deeds, however, were not recorded until September 4, 1953, a period of less than than three years prior to his death. The period of three years is significant because of the requirements of subdivision 12 of section 249-r, of the Tax Law, which reads: “ If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money’s worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of paragraphs three, four and seven of this section; but no such transfer, relinquishment, exercise, or release made prior to such three year period shall be deemed or held to have been made in contemplation of death.”
Although there is some discussion in the briefs as to whether the transfer in any event was in contemplation of death, the *351 parties have relegated this to a minor issue and have come to grips on the primary question as to whether the transfer was made at the time of the date of the execution of the deeds or at the time of their recording (cf. Matter of Battey, 111 N. Y. S. 2d 359; Matter of Reierson, 167 Misc. 182).
The fact of the execution of the deeds at the time they are dated is not directly disputed by the Tax Commission. The precise issue therefore seems to be whether delivery of the deeds was affected at the time they were recorded. If so, then the transfer was made within the three-year period. If delivery was effected at the time of the date of the deeds, the transfer must be deemed not to have been made in contemplation of death.
The Tax Commission concedes in its brief that it has a significant burden: “As a result, the pertinent questions in any inquiry in this regard are whether (1) a transfer was made; (2) it was made for an adequate and full consideration in money or money’s worth; (3) it was made within three years of the death; and (4) it was made in contemplation of death. The burden of establishing the affirmative of the first and third elements is on the Tax Commission, which also must establish the negative of the second element.” Since (2) and (4) have in effect been removed as determinants on this appeal, it has apparently become the burden assumed by the Tax Commission to establish that a transfer was made within three years of the decedent’s death.
In addition to the affirmative testimony presented by the executor in the form of affidavits, the estate is aided by certain presumptions. These are stated in American Law of Property (Vol. 3, § 12.97) as follows: “In construing deeds, it is the policy of the courts to take a number of matters for granted unless there is evidence to the contrary. The presumptions are of great importance not merely for that reason but because they afford the basis for the conclusions of title examiners. Some of these have been mentioned, and from time to time others will be noted. Accordingly, only a few having general implications will be considered at this time.”
‘1 An instrument in the form of a deed is presumed to be a deed, and a purchaser from the grantee lacking notice to the contrary may rely on it as such. The certificate of acknowledgment affords prima facie evidence not only of execution but of delivery; and the presumption is increased by attestation and by recording. The presumption is not disturbed by the fact that the deed is recorded after the grantor’s death. In the case of a recorded deed, acceptance is also presumed. It has been held *352 that a deed will be presumed to have been delivered on the date of recording, but it is the general rule that a deed was both executed and delivered the day of its date. However, several courts consider that the modern practice of acknowledging deeds justifies a presumption that a deed has not been delivered earlier than the date of acknowledgment. There appears to be no disagreement that the latter is the presumed date of delivery when it is earlier than the stated date of execution.” (See, also, 16 Am. Jur. Deeds, § 387; 20 Am. Jur., Evidence, § 239.)
The law as just stated has been consistently followed by the New York courts.
“ The objection that the deed from Robinson to the plaintiff of September 2, 1851, did not operate to transfer the estate to the latter as of its date, was not well taken. The deed bore date 2d September, 1851, and it was acknowledged on that day, but appears not to have been recorded until the 20th October, 1852. The date is presumptively the true time of the execution of a deed. (Jackson v. Hill, 5 Wend., 532.) The deed was acknowledged on the day it bore date. The Revised Statutes do not affect this rule in cases where the deed has been proved or acknowledged. (Elsy v. Metcalf, 1 Denio, 323.) There was no presumtion that the deed was not delivered until it was recorded; but on the contrary, in the absence of proof showing nondelivery, the presumption was that it was delivered on the day it bore date. (Robinson v. Wheeler, 25 N. Y. 252, 260.)
“No other evidence was given than that which the deed itself furnished, for the purpose of showing the time of its delivery; and under the state of the proof, the law presumes it to have been delivered at the time of its date.” (People v. Snyder, 41 N. Y. 397, 402.)
“ In the absence of any proof to the contrary, it must be presumed that these deeds were delivered at their date.” (Purdy et al. v. Coar, 109 N. Y. 448, 450.)
“When the defendants produced and put in evidence the deed of conveyance under which they claimed, a presumption of fact at once arose that it was delivered as of its date (Strough v. Wilder, 119 N. Y. 530).” (Ranken v. Donovan, 115 App. Div. 651, 652.)
Although it has on occasion been said loosely that the presumption of delivery is effective as of the date of recording and does not relate back to the date of execution (cf. Maryland Gas. Co. v. Stern, 5 Misc 2d 423), an examination of the authorities for this proposition shows that they do not weaken the presumption discussed in the New York cases quoted from above; they do add another presumption that where, for some reason, *353 delivery at the time of execution is negated, a presumption arises of delivery at the time of recording. Thus in Malcolm Realty Co. v. 21 East 21st St. Corp. (245 App. Div. 731) the court said that the evidence that the deed was not delivered until the date of recording was uncontradicted and stated that there was therefore a presumption that the deed was not delivered until the date it was recorded, citing Ford v. Gale (155 App. Div. 675). In the Ford case the court found that the testimony showed affirmatively that there was no delivery at the time of the execution of the deed and stated (p. 678): “ While in the absence of proof it is a legitimate inference that a deed is delivered, if at all, at the date of its execution, yet that is a presumption only, and must give way to positive proof. Following the execution of the deed there was no change in the management or possession of the farm. The tenant upon the property knew of no change of ownership. The checks arising from the sale of produce continued to be made in the name of the grantor. There is, therefore, no suggestion of proof of a delivery of this deed preceding its recording in June, 1907.
“ The recording again raises a presumption of delivery, but that presumption is to be given effect only as of the date of the recording. It does not relate back to the date of execution, and, therefore, the grant is to be sustained, if at all, upon a delivery made June 25,1907.”
Of interest is Matter of Schummers (210 App. Div. 296) where the deed was not recorded until after the death of the testatrix. The court said at page 302: ‘ ‘ Appellants also claim that the purchase price of a piece of property belonging to the estate has not been accounted for. To show that the property did not belong to the estate the respondents have produced a deed from the testator to the respondent Frederick F. Schum-mers dated March 8, 1897, and recorded April 27, 1918. The question relates to the delivery of this deed. As it runs to the respondent Frederick F. Schummers, an executor, the recording of it after the testatrix’s [sic] death would seem not to be presumptive of delivery. But the deed was acknowledged before Henry A. Walker, a notary public, and was witnessed by him, his signature appearing under the words 1 sealed and delivered in presence of.’ This latter circumstance presumptively establishes delivery. (Hulse v. Bacon, 40 App. Div. 89; affd. 167 K Y. 599.)” (Cf. Lee v. Beagell, 174 Misc. 6; Berigan v. Berigan, 413 Ill. 204.)
On the issue of delivery the estate here presented affidavits by the grantee sons and by a notary public whose affirmative testimony (in affidavit form) would, if credited, support a finding *354 of delivery at the time of execution of the deeds. The appraiser in reaching a contrary conclusion, and the Tax Department in seeking to uphold the appraiser’s finding, both reject this testimony and rely on inferences reflected in such statements as (1) the grantee sons are interested in the result and their statements self-serving and perhaps inadmissible because violative of section 347 of the Civil Practice Act. (2) the notary “ while possessing no interest in the controversy in the strict legal sense ’ ’ is not “ indifferent to the result ”. (3) no gift tax return was filed. (4) the decedent continued to show on his income tax reports the payment of real estate taxes on the properties.
The difficulty with the State’s position is that in order to support the appraiser’s finding, it is necessary to reject categorically the testimony of the estate’s witnesses and credit as controlling the inferences to be drawn from collateral activities of the decedent and related matters.
On the present state of the record the court feels that disproportionate weight was given by the appraiser to inferences in the absence of a direct finding after hearing witnesses, that the estate’s direct testimony buttressed by the presumption of delivery at the time of the execution of the deeds, was incredible.
The character of the pro forma order of the Surrogate is discussed in Harris Estates Practice Guide (Vol. 2, § 541); Jessup-Redfield on Surrogates’ Law and Practice (Vol. 5, § 4200 et seq); Warren’s Heaton on Hew York Surrogates’ Courts (Vol. 6, § 20.8 et seq.). The Tax Commission urges the proposition that the appraiser’s determination should not be disturbed in the absence of palpable error or where there was sufficient evidence to justify his finding (citing Matter of Mylod v. Graves, 274 N. Y. 381, 387; People ex rel. McKnight v. Glynn, 56 Misc. 35, 39; Matter of Dunne, 138 Misc. 840, 844; Matter of Winsweiler, 146 Misc. 436, 437; Matter of James, 148 Misc. 124, 125; Matter of Enright, 149 Misc. 353; Matter of Seixas, 173 H. Y. S. 766; Matter of Rich, 151 Misc. 852, 856).
On this subject, however, Warren’s Heaton on Surrogates’ Courts (Vol. 6, § 20.7) states: “It has been held that an appraiser in determining that a transfer was made in contemplation of death is acting in a judicial capacity, and that the surrogate on an appeal from a pro forma order confirming the appraiser’s report is hesitant to reverse a factual determination made by 1 a judicial officer ’ who has seen and heard the witness. This pronouncement must, however, be received with great caution and may not be extended.” (Italics supplied.)
The Surrogate’s procedure on appeal from his pro forma taxing order is concisely stated in Harris Estates Practice Guide *355 (Vol. 2, § 552): “ The method of reviewing errors of law is by appeal.
‘ ‘ The surrogate may take additional evidence upon the appeal. He is not limited to the evidence before the appraiser, but he is not bound to consider all additional evidence but only such portions thereof as are legal proof of the facts in issue. Whether additional evidence will be received rests in his reasonable discretion. He may before deciding the appeal remit the matter to the appraiser for further proof. If without deciding the appeal the matter is remitted to the appraiser and an order entered on a supplemental report it is again appealable to the surrogate.”
Of the alternatives available to it, the court feels that this issue should not be determined without providing the executor an opportunity to present his witnesses in person so that all of the necessary criteria will be made available for the purpose of determining veracity. This opportunity could be afforded by requiring such testimony to be produced before the appraiser or before the court. In this instance the court will remit the report to the appraiser to take further oral testimony and require a supplemental report. This procedure is discussed in Warren’s Heaton on Surrogates’ Courts (Vol. 6, § 20.14): “ It is proper in case of an appeal from the pro forma order for the surrogate to remit the report to the appraiser to take further testimony without either vacating or reversing the original order or even before any order has been made; this, however, is entirely discretionary with him. Where the appraiser thereupon files a supplemental report which attempts to confirm the original report, that portion of the report is mere surplusage, and the same characterization would apply to an order which ratified and confirmed the original order fixing the tax. Up to this point there is no judicial determination of the question presented by the appeal, both orders being merely pro forma. The appeal to the surrogate is as before stated, somewhat in the nature of a motion for reargument. The purpose of this appeal ‘ is not simply to review his former determination. There is no occasion to limit it to that. The beneficial results of such a rehearing would be greatly diminished if the determination of the surrogate could not at that time be treated as so far open as to admit new testimony. The law relates to matter of public interest and should receive such liberal construction as will tend to make it the most efficient ’. ’ ’
This appeal will be held in abeyance pending the filing of such a supplemental report.
Proceed accordingly.