■ JANIE ZAMBITO, Respondent, v DENNIS ZAMBITO, Appellant.—Levine, J. Appeal (transferred to this court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Stolarik, J.) granting plaintiff a divorce, entered September 22, 1989 in Rockland County, upon a decision of the court.

The parties were married in 1974 and have two children, one born in 1977 and one in 1978. They separated in 1986 and entered into a written separation agreement in October of that year. After an aborted reconciliation attempt, plaintiff commenced this action for a divorce on cruelty grounds. In an amended complaint, however, she added a cause of action for a conversion divorce based upon the parties' separation pursuant to the separation agreement. After trial, Supreme Court rejected defendant's claim that the separation agreement was unconscionable and that the parties had repudiated the agree-

ment. The court granted judgment to plaintiff for a conversion divorce. This appeal followed.

The judgment should be affirmed. First, we entirely agree with Supreme Court's rejection of defendant's attempt to set aside the separation agreement. Defendant clearly failed to demonstrate any unfairness in the essential terms of the agreement. Despite the fact that this was a 12-year marriage, that plaintiff was not fully self-supporting and that defendant's affair with another woman was the apparent cause of the breakup of their relationship, plaintiff waived the right to receive even durationally limited maintenance. Defendant's gross income in 1986 exceeded $40,000. The agreement's provision for child support payments by defendant of $125 a week for each of two children, in the light of the respective resources of the parties, was certainly not unreasonably generous. As to equitable distribution, the major items of marital property consisted of the marital residence and the marital portion of defendant's pension. A postponed equal division of both assets hardly reflects any unfairness.

Nor does the record afford a basis for upsetting Supreme Court's finding that the separation agreement was not the product of any fraud, coercion or other overreaching conduct on plaintiff's part. Although defendant was not represented by an attorney at the time of the execution of the agreement, this alone does not establish overreaching by plaintiff (see, Paruch v Paruch, 140 AD2d 418, 421). At the time of execution, defendant acknowledged by affidavit that the decision not to retain an attorney was made freely and deliberately. He also made modifications in the instrument favorable to him before signing it and thereafter complied with its terms without complaint for the next 10 months. Apart from the foregoing factors, all of which militate against any finding of invalidity, defendant's claims for setting aside the agreement basically turn on the resolution of issues of credibility of the parties, where we should defer to the trial court's determination.

Similarly, the question of whether a reconciliation occurred between the parties abrogating the separation agreement largely depends on which of the parties' competing versions of the facts are accepted. According to plaintiff, during the period from about April 1987 to August 1987 when she and defendant considered reconciling, they shared the marital residence only occasionally and they did not cohabit. During the same period, defendant continued to have his mail sent to his sister's home where he resided after the separation, main-

tained an answering machine there and made regular child support payments. Moreover, the terms of the separation agreement required that any reconciliation should be reduced to writing. Based upon all of the foregoing, Supreme Court's factual determination that there had not been any mutual understanding of both parties to effectuate an abrogation of the agreement through reconciliation should not be disturbed *(see, Rosenhaus v Rosenhaus,* 121 AD2d 707, 708, *lv dismissed* 68 NY2d 997; *Breen v Breen,* 114 AD2d 920, 921).

Next, we disagree with defendant's claim that the separation agreement had been abrogated by plaintiff's repudiation of it with defendant's acquiescence. Whether there has been a mutual rescission of a separation agreement through repudiation of the agreement by one party acquiesced in by the other is generally a question of fact *(see, Hickland v Hickland,* 46 AD2d 1, 5-6, *lv denied* 35 NY2d 646). In making the determination, the courts look to whether there are unequivocal acts demonstrating that the parties no longer intend to rely upon or be bound by the terms of the agreement *(see, supra; see also, Burtch v Burtch,* 98 AD2d 704; *Matter of Robinson v Robinson,* 81 AD2d 1028, 1029). Defendant relies on three factors to show plaintiff's repudiation of the agreement: (1) when plaintiff added a cause of action for divorce in her first amended complaint, she sought "a *de novo* determination with respect to [the financial issues] and equitable distribution", (2) plaintiff denied him visitation from about mid-August 1987 until mid-November 1987, when defendant obtained a court order enforcing his visitation rights, and (3) plaintiff permitted her attorneys to place liens on the marital residence to secure payment of counsel fees for representing her in the marital action.

As to any inference of plaintiff's intent to repudiate the separation agreement from the relief sought in the first amended complaint, we note that plaintiff pleaded two additional causes of action therein, one for damages for defendant's alleged breach of the separation agreement, the other seeking a judgment for additional child support arrearages based upon an escalation clause in the separation agreement. Moreover, plaintiff's second amended complaint is clearly based upon the continued viability of the separation agreement. Thus, plaintiff's pleadings in this action fall far short of any unequivocal showing of her intent to rescind the agreement. The denial of visitation immediately followed what concededly was a bitter confrontation between plaintiff and defendant, conclusively ending any hopes of visitation. Within

days thereafter, defendant resumed the extramarital affair that had led to the initial marital breakup. These events, and the emotional stress resulting therefrom, best explain plaintiff's action in depriving defendant of visitation, and support Supreme Court's conclusion that the denial of visitation, while not condoned, did not evince any intent on plaintiff's part to abandon the separation agreement. By the same token, allowing the encumbrancing of the marital residence in order to obtain legal services to protect and enforce plaintiff's marital rights is not at all inconsistent with her adherence to the separation agreement. Thus, Supreme Court's determination that there was no repudiation of the agreement by plaintiff is supported by the record and we should not disturb it.

Finally, we disagree with defendant's contention that plaintiff's denial of visitation from about mid-August 1987 to mid-November 1987 should result in a forfeiture of her right to a conversion divorce based upon living apart pursuant to the separation agreement (see, Domestic Relations Law § 170 [6]). It is noteworthy that, in defendant's July 11, 1988 answer and counterclaims to the second amended complaint, the *only* denial of visitation alleged is the foregoing approximate three-month period. Thus, plaintiff apparently complied with the visitation provisions of the agreement both before and after that period. In view of plaintiff's circumstances and emotional state at that time as previously described, we conclude that the temporary denial of visitation which occurred here was not such a material breach of the agreement so as to require us to overturn Supreme Court's finding of substantial performance of the separation agreement on plaintiff's part (see, *Lawson v Lawson*, 79 AD2d 787, 788; see also, *Bock v Bock*, 121 AD2d 672, *lv denied* 69 NY2d 611).

For all the foregoing reasons, the judgment of divorce should be affirmed. Judgment affirmed, with costs. Mahoney, P. J., Weiss and Levine, JJ., concur.

Casey and Yesawich, Jr., JJ., dissent and vote to reverse in a memorandum by Yesawich, Jr., J. Yesawich, Jr., J. (dissenting). We respectfully dissent.

The parties' separation agreement placed a heavy financial support obligation upon defendant, which he honored for 10 months. Then, reacting to plaintiff's decision to deny his visitation, he ceased making payments. When efforts to reconcile failed plaintiff commenced this action, initially seeking custody, support, maintenance and equitable distribution determinations. In her amended complaint, however, she sought a conversion divorce. Plaintiff asserted that she and defendant

lived separate and apart for more than one year and that she had substantially complied with the terms and conditions of the separation agreement. She also sought to recover for damages suffered because of defendant's alleged conversion (not found to be so by Supreme Court) of the proceeds of a second mortgage which the parties obtained on the marital residence some 10 months after the separation agreement was executed.

We are unable to agree with Supreme Court that although plaintiff may have breached the agreement, her conduct did not constitute a complete repudiation thereof. Plaintiff irrationally refused to honor defendant's visitation rights for four months and allowed a lien to be placed on the marital residence to satisfy her legal fees in direct violation of the terms of the agreement. The fact that plaintiff at the outset sought pendente lite relief and a de novo determination of matters explicitly covered in the agreement, including support, custody and maintenance, lends further support to our conviction that she no longer considered the separation agreement as defining the parties' obligations. As plaintiff's actions represent a material breach and manifest repudiation of the agreement, to which defendant acquiesced, it is no longer extant *(see, Cavellier v Cavellier,* 4 AD2d 600, 602; 2 Lindey, Separation Agreements and Antenuptial Contracts § 36.04; *see generally,* 2 Foster, Freed & Brandes, Law and the Family New York §§ 12:43-12:45, at 981-984 [2d ed]). And, it may not form the basis for a conversion divorce *(see generally,* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C170:19, at 626; *cf., Matter of Wilson,* 50 NY2d 59, 66).

Accordingly, we would reverse the judgment and remit the matter to Supreme Court for further proceedings.