Tuesday        23rd

          July, 2002.


Michael Charles Fries,                                    Appellant,

 against        Record No. 1029-01-3
                Circuit Court No. CH95-76-02

Patricia Ann Kelly Fries (now Carroll),                  Appellee.


                    Upon a Rehearing En Banc

   Before Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
    Bray, Annunziata, Bumgardner, Frank, Humphreys and Clements


                    Frank K. Friedman (Richard C. Maxwell;
                    John Cotton Richmond; Woods, Rogers &
                    Hazlegrove, P.L.C., on briefs), for
                    appellant.

                    J. Emmette Pilgreen, IV (Jonathan S.
                    Kurtin; Harvey S. Lutins & Associates;
                    Shapiro & Kurtin, on brief), for
                    appellee.


        By memorandum opinion, a divided panel of this Court

affirmed in part, reversed in part, and remanded to the trial

court for further proceedings.  We subsequently granted a

rehearing en banc and stayed the mandate of the panel decision.

        Upon rehearing en banc, it is ordered that the stay of

the January 15, 2002 mandate is lifted, and the judgment of the

trial court is affirmed, in part, reversed in part, and remanded

to the trial court for further proceedings in accordance with

the majority opinion of a panel of this Court.

Judges Benton, Willis and Frank concur, in part, and dissent, in part, for those reasons expressed in the concurring and dissenting opinion of the panel.

This order shall be certified to the trial court.

A Copy,

Teste:

Cynthia L. McCoy,
Clerk

By:

Deputy Clerk


COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Elder and Bumgardner
Argued at Salem, Virginia


MICHAEL CHARLES FRIES

MEMORANDUM OPINION[*] BY
v.   Record No. 1029-01-3           JUDGE LARRY G. ELDER
                                    JANUARY 15, 2002
PATRICIA ANN KELLY FRIES (NOW CARROLL)


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
George E. Honts, III, Judge

Frank K. Friedman (Richard C. Maxwell; John
Cotton Richmond; Woods, Rogers & Hazlegrove,
P.L.C., on briefs), for appellant.

J. Emmette Pilgreen, IV (Jonathan S. Kurtin;
Harvey S. Lutins & Associates; Shapiro &
Kurtin, on brief), for appellee.

_____

    * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Michael Charles Fries (Fries) appeals from a circuit court (trial court) ruling determining the ownership of real and personal property as between Fries and his former wife, Patricia Ann Kelly Fries Carroll (Carroll), and finding, pursuant to a 1978 separation agreement between the parties which was expressly governed by New York law and was never abrogated, that Fries owed Carroll spousal and child support for the period of their sixteen-year reconciliation. Carroll contends the trial court erroneously concluded the parties did not repudiate the 1978 separation agreement. We hold the evidence supported the trial court's conclusions that the agreement remained valid and that wife had a half interest in the marital residence and subject bank accounts. However, we reverse the trial court's award of spousal and child support for the period during which Carroll and the parties' daughter resided with and were at least partially supported by Fries, and we remand to the trial court to determine whether Carroll was entitled to an award of child support for the period of time from the parties' 1995 separation until their daughter's twenty-first birthday.

I.

A.

REPUDIATION OF THE AGREEMENT

In Fries v. Fries, No. 2803-99-3, 2000 WL 527675 (Va. Ct. App. May 2, 2000) (hereinafter Fries I), we held that New York

-

law governed the parties' agreement.  "Whether there has been a mutual rescission of a separation agreement through repudiation of the agreement by one party acquiesced in by the other is generally a question of fact."  Zambito v. Zambito, 566 N.Y.S.2d 789, 791 (N.Y. App. Div. 1991).  In determining whether rescission by repudiation and acquiescence has occurred, "the courts look to whether there are unequivocal acts demonstrating that the parties no longer intend to rely upon or be bound by the terms of the agreement."  Id.

Here, the parties' agreement provided it could be amended or modified only "by an agreement in writing duly subscribed and acknowledged with the same formality as this agreement."  As we discussed in Fries I, the agreement also provided that a reconciliation or resumption of marital relations would not invalidate or otherwise affect the agreement unless the parties cancelled the agreement in writing.  Assuming without deciding that at least one of the parties repudiated the agreement and the other acquiesced therein, here, as in Fries I, these acts nevertheless were insufficient to overcome the express requirements of the agreement that any modification, waiver or revocation must be in writing.

Thus, the evidence supports the trial court's finding that the parties did not abrogate the agreement through repudiation and acquiescence.

B.

-

OWNERSHIP OF PROPERTY

"Where the terms of a separation agreement 'are clear and unambiguous, the intent of the parties must be found therein.'" Fries I, at **1 (quoting Nichols v. Nichols, 119 N.E.2d 351, 353 (N.Y. 1954)). The trial court observed that the parties' agreement did not specifically address "post-reconciliation gifts," but it held, in essence, that Fries' titling the properties jointly in his and Carroll's names nevertheless resulted in Carroll's obtaining an interest in those properties under the terms of the parties' agreement.

The agreement addresses the ownership of subsequently acquired property, "property . . . of any kind . . . which may hereafter belong to . . . or come to him or her." (Emphasis added). In defining ownership of property, the provision speaks, inter alia, to property "owned by him or her" or "in his or her name." (Emphasis added). Thus, the separation agreement provides, in effect, that ownership may be determined by title.

The trial court found that "[Fries] was free under the [agreement] to conceal, waste, accumulate and firmly hold his separately titled property free from [Carroll's] demands" but that when Fries titled this property jointly, Carroll obtained "interests in the bank accounts and the marital home." Although the trial court said that Fries "gifted" those interests to Carroll, it also emphasized the existence of a "valid contract" between the parties and held that the existence of the contract

-

rendered "meaningless" Fries' "prolonged efforts to trace his assets." Thus, the trial court's statements, although inartfully phrased, indicate it held that an interest in the bank accounts and marital home passed to Carroll under the agreement when Fries titled these properties jointly in his and Carroll's names. The trial court was free to reject Fries' claim that he acted with a contrary intent when he titled the property jointly and to rely on the evidence of mutual intent demonstrated by the contract itself.

## C.

### SUPPORT AWARDS

New York law provides that an obligor parent paying support pursuant to a separation agreement for a child in the custody of the obligee parent is entitled to cease those support payments to the obligee parent when the obligor parent assumes full custody. See Goldberg v. Benner, 668 N.Y.S.2d 659, 660 (N.Y. App. Div. 1998); Souran v. Souran, 363 N.Y.S.2d 511, 514 (N.Y. Dist. Ct. 1975). We hold these same principles apply to Fries' obligation to pay spousal support. Thus, Fries was entitled under New York law to credit for the "in kind" payments he made while the parties resided together with their daughter. Because the trial court found Fries' "in kind" payments exceeded the child and spousal support he owed Carroll pursuant to the agreement, we reverse the trial court's award of spousal and child support for the time during which Carroll and the parties'

-

daughter resided with Fries and were supported, at least partially, by him.  Pursuant to the agreement, however, Carroll remained entitled to spousal support from the time the parties separated on April 14, 1995, until she remarried on May 23, 1997.

We remand to the trial court to make the necessary findings of fact regarding whether Carroll was entitled to receive child support during the period from the parties' 1995 separation until their daughter turned twenty-one on October 10, 1996. Fries represents that their daughter resided with him and at college during this period of time and, accordingly, that Carroll was not entitled to receive child support for this period.  However, the parties' daughter testified that Carroll wrote her checks and gave her cash while she was in college.  On remand, the trial court should take additional evidence if necessary to determine whether Carroll was entitled to child support, pursuant to the agreement, during this period of time.

                                II.

For these reasons, we affirm the trial court's ruling finding the agreement valid and awarding wife a half interest in the marital residence and subject bank accounts.  However, we reverse the trial court's award of spousal and child support for the period during which Carroll and the parties' daughter resided with and were at least partially supported by Fries, and we remand to the trial court to determine whether Carroll was

                                -

entitled to an award of child support for the period of time

from the parties' 1995 separation until their daughter's

twenty-first birthday.

Affirmed in part,
reversed in part
and remanded.

Benton, J., concurring, in part, and dissenting, in part.

I join in Parts IA and IC of the majority opinion. For the reasons that follow, I dissent from Part IB.

The trial judge found that Michael Fries gave Patricia Carroll gifts, which were not addressed by the provisions of their contract. He, therefore, ruled that Carroll was entitled to an interest in property that had been Fries' separate property. His findings on this issue are as follows:

> In the fact of that contract, upon which Husband has consistently insisted was binding and upon which he has now prevailed, he took actions to gift certain properties to Wife. Among them were interests in bank accounts and the Virginia real estate. The contract, which was never modified by the parties, does not address these post-reconciliation gifts.
>
> We also note that with a valid contract in place and subsequent gifts to Wife by Husband, Husband's much prolonged efforts to trace his assets becomes meaningless. Husband was free under the contract to conceal, waste, accumulate and firmly hold his separately titled property free from Wife's demands. He voluntarily opted not to do so in those instances wherein he gifted property to Wife. As to such property he is, and should be, impaled on the skewers of his voluntarily acts.
>
> It appears to this Court that Wife is entitled to the value of such property and property interests as were gifted to her by Husband subsequent to the execution of the New York contract.

- 7 -

I would hold that the trial judge erred in ruling that Fries made gifts to Carroll. Furthermore, I can discern nothing in the trial judge's finding that supports the majority's conclusion that these gifts "resulted in Carroll obtaining an interest in those properties under the terms of the parties' agreement."

The undisputed evidence proved that when the parties moved to Virginia, Fries used money that was his separate property to acquire real estate and to open two bank accounts. He purchased the real estate without a mortgage, and he jointly titled the real estate in his and Carroll's names. He also opened the bank accounts in both names. The trial judge correctly found that these transactions took place "subsequent to the execution of the New York contract" and that "[t]he contract . . . does not address these post-reconciliation" acts. I would hold that, because these properties were titled in Virginia during the marriage and were not covered by the New York contract, the issue whether Fries made gifts of these properties to the wife is a question to be determined by Virginia law.

In pertinent part, Code § 20-107.3(A)(3) provides as follows:

> f. When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a

-

> preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.
>
> g. Subdivisions A 3 d, e and f of this section shall apply to jointly owned property. No presumption of gift shall arise under this section where (i) separate property is commingled with jointly owned property; (ii) newly acquired property is conveyed into joint ownership; or (iii) existing property is conveyed or retitled into joint ownership. For purposes of this subdivision A 3, property is jointly owned when it is titled in the name of both parties, whether as joint tenants, tenants by the entireties, or otherwise.

Thus, the domestic relations law in "Virginia does not presume a gift simply by virtue of jointly titling or retitling property." Lightburn v. Lightburn, 22 Va. App. 612, 616-17, 472 S.E.2d 281, 283 (1996).

As the "party claiming entitlement to rights and equities in . . . property by virtue of an interspousal gift," Carroll bore the burden of "prov[ing] the donative intent of [Fries] and the nature and extent of [his] intention." Id. at 617, 472 S.E.2d at 283. See also Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813 (1996). "The fact that property is jointly titled . . . is [alone] insufficient proof of a gift." Rowe v. Rowe, 24 Va. App. 123, 137, 480 S.E.2d 760, 766 (1997). The record in this case proves no more than joint titling and, thus, is insufficient to support the trial judge's ruling that Fries gifted the real estate or bank accounts to Carroll.

-

I believe the majority reads into the trial judge's opinion a finding that the trial judge never made.  The trial judge specifically found that the parties' "contract . . . does not address these post-reconciliation gifts."  The judge's reference to Fries' efforts to trace his assets clearly relates to the statutory requirements contained in Code § 20-107.3(A)(3)(f).  The judge's further reference to Fries' efforts at retracing to be "meaningless" flows from the judge's finding of "gift," which statutorily renders tracing irrelevant.  See id.  In short, the trial judge's findings and analyses are strictly confined to the requirements of Code § 20-107.3(A)(3)(f) and do not support the majority's conclusion that the trial judge was addressing "an interest . . . pass[ing] to Carroll under the agreement."

I would hold that Carroll failed to prove a gift and, therefore, the trial judge erred in ruling that the real estate and the bank accounts were not Fries' separate property.  Accordingly, I would direct the trial judge on remand to amend the final decree to reflect the classification error.